Joseph L. PHILLIPS, Appellant,

v.

STATE of Indiana, Appellee.

No. 984S367.

Supreme Court of Indiana.

April 25, 1986.

Chokwe Lumumba, Detroit, Mich., Howard Grimm, Jr., Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

This case presents an important question of first impression: the circumstances under which police may resume interrogation of a suspect who has invoked his right to remain silent.

Appellant Joseph Phillips was charged initially with murder, Ind.Code § 35-42-1-1(2) (Burns 1985) and burglary, a class A felony, Ind.Code § 35-43-2-1 (Burns 1985). The jury returned verdicts of guilty for each of these charges. The judge then merged the two offenses and sentenced defendant to a term of fifty years for the murder conviction.

Appellant raises three issues in this direct appeal:

(1) Whether admission of an inculpatory statement taken from Phillips after he invoked his right to remain silent and then initiated further discussion violated his *Miranda* rights,

(2) Whether the warrantless arrest of the accused in his home is justified when the police have obtained consent to enter; and

(3) Whether the evidence is sufficient to sustain his conviction.

These are the facts which tend to support the trial court's judgment. On October 2, 1983, three men broke into the residence of Robert Smith, age 87, and ransacked it. Mr. Smith died from two gunshot wounds to his chest sustained during the robbery.

On October 13th, Lee Drew gave a statement to the police admitting his own participation and implicating appellant and Brice Littlejohn in the burglary and homicide of Smith. As a result of Drew's statement, police arrested Phillips on the same day. They read him his *Miranda* rights, but he declined to make a statement. Three days later Phillips told the police that he, Drew, and Littlejohn broke into Smith's house, but he denied shooting the victim.

One of Smith's neighbors saw appellant walking in the direction of Smith's house on October 2nd at 11 p.m., and she positively identified Phillips in court. In addition, an inmate who shared a cell with defendant in October also testified that Phillips admitted that he shot Smith two times because the deceased walked in on him while he was ransacking the home.

*I. Admission of Phillips' Statement*

On October 13, 1983 appellant was arrested by the police at his home. That

same afternoon the police interrogated appellant after a full advisement and waiver of his *Miranda* rights. Appellant stated that he did not have any knowledge about the Smith homicide and then announced that he did not wish to discuss it any further. The police immediately ceased this interrogation and then booked defendant on the present charges.

Three days later defendant told the jail commander that he wanted to speak with either Officer Martin Eby or Officer David Becher about his case. Becher came to the police station. Since he did not have an advice of rights form with him at the time, Becher advised appellant orally that: he had the right to remain silent, that anything he said could be used against him in court, that he could have an attorney present during questioning, and that he could terminate the interview at any time. Becher did not inform appellant prior to this second interrogation that if he could not afford an attorney one would be appointed. Phillips stated that he understood the rights of which he was orally advised and that he remembered the constitutional rights which were read to him prior to the first interrogation.

At this second interrogation appellant first recited a story which the police did not believe. The police again told defendant that Lee Drew would testify at trial that Drew, appellant, and Littlejohn had committed this burglary and homicide. Phillips then told the police that while he was ransacking the house he was warned by someone that the owner was home. Phillips then heard two gunshots as he was fleeing from the residence. The police requested that appellant give them a formal written statement admitting his participation in the burglary and homicide of Smith. Phillips refused.

On October 20th, the police interrogated defendant a third time after giving him a full recitation of his constitutional rights and obtaining a signed waiver. Becher testified that he wanted to give Phillips the

opportunity to tell the truth since they had received information that a witness could identify him as the person who was seen outside the Smith residence. Phillips made a short statement that the police did not have any evidence against him and that he would see them in court.

Appellant argues that the incriminating statement which he gave at the second interrogation was inadmissible because the police did not advise him prior to the interrogation that if he could not afford an attorney one would be appointed. However, since Phillips had already been advised of *all* his rights on the day of his arrest and chose to remain silent, the issue is whether the police resumed interrogation improperly.

▇ Warning the accused that he has the right to remain silent is an "absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere." *Miranda v. Arizona* (1966), 384 U.S. 436, 468, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694, 720. The Supreme Court has prescribed the procedures which police must follow after the accused has been advised of his constitutional rights:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1627–1628.

The circumstances under which an interrogation may be resumed was not addressed directly in *Miranda*. The Court did note that if the accused invoked his right to remain silent when his attorney was present that further questioning might be proper in the presence of his counsel.[1]

---

1. In footnote number 44, the Court noted that "If an individual indicates his desire to remain silent, but has an attorney present, there may be some circumstances in which further question-

However, it also suggested that the presence of an attorney may not always be required as a condition to further questioning of the accused. Procedures differ depending upon which right is invoked. When an attorney is requested, interrogation must cease until an attorney is present; when a defendant indicates he wishes to remain silent, interrogation must cease. *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627–1628.

The Court later held that the admissibility of statements obtained from a custodial interrogation conducted subsequent to the accused's invocation of his right to remain silent is dependent upon whether his right to cut off questioning was scrupulously honored.[2] *Michigan v. Mosley* (1975), 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313. The facts in *Mosley* are similar but not dispositive of the case at bar. In *Mosley,* the police advised the accused of his *Miranda* rights before questioning him about a robbery. The defendant stated that he did not want to answer any questions about the robbery and the interrogation was promptly ceased. Later that same day Mosley was again advised of his *Miranda* rights and then interrogated by another detective about an unrelated homicide. At this time the defendant made a statement implicating himself in the murder. The Court found that Mosley's right to terminate questioning was scrupulously honored. The Court relied on three facts from the record in reaching this conclusion:

(1) The first interrogation (robbery) was immediately terminated upon Mosley's invocation of his right to remain silent.

(2) The officer who conducted the first interrogation did not try to resume questioning or to pursuade Mosley to reconsider his position.

(3) Mosley was fully apprised of his constitutional rights before the second interrogation which focused on an unrelated homicide.

The U.S. Supreme Court has not dealt directly with the issue presented by Phillips. However, there are several cases from that Court and this one which examine the resumption of questioning when the accused has invoked his right to the assistance of counsel. *Smith v. Illinois* (1984), 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488; *Solem v. Stumes* (1984), 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579; *Oregon v. Bradshaw* (1983), 462 U.S. 1039; 103 S.Ct. 2830, 77 L.Ed.2d 405; *Wyrick v. Fields* (1982), 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214; *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Moore v. State* (1984), Ind., 467 N.E.2d 710; *Clark v. State* (1984), Ind., 465 N.E.2d 1090; *Romine v. State* (1983), Ind., 455 N.E.2d 911. The language and logic of these opinions are helpful in analyzing resumption of interrogation after an accused has invoked his right to remain silent.

When an accused has invoked his right to have counsel present during the custodial interrogation, a valid waiver of that right is not established by showing that he responded to police-initiated interrogation after being again advised of his rights. *Edwards, supra.*[3] If the accused

---

ing would be permissible. In the absence of evidence of overbearing, statements then made in the presence of counsel might be free of the compelling influence of the interrogation process and might fairly be construed as a waiver of the privilege for purposes of these statements." *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627–1628.

2. The *Mosley* Court indicated that the *Miranda* opinion was based upon the "intention of the Court in that case to adopt 'fully effective means ... to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored ...' We therefore conclude that the admissibility of statements

obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Mosley,* 423 U.S. at 103–04, 96 S.Ct. at 326.

3. Accord, *Michigan v. Jackson,* —— U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Jackson,* the Court extended the Fifth Amendment analysis utilized in *Edwards* to a Sixth Amendment context: if the police initiate an interrogation after defendant asserts his right to counsel at an arraignment or a similar proceeding, any waiver of that right for that police-initiated interrogation is invalid.

initiates a second dialogue with the police, then any volunteered statements are admissible at trial. *Edwards, supra.* However, the accused may not be subjected to further interrogation until counsel has been made available or the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards, supra;* Accord, *Watkins v. Virginia,* ── U.S. ──, 106 S.Ct. 1503, 89 L.Ed.2d 903 (1986) (Dissenting opinion to the denial of certiorari). This is a prophylactic rule designed to protect the accused in police custody from being badgered by the police officers. *Bradshaw, supra.*

The accused's initiation of a dialogue with the police does not suffice *ex proprio vigore* to show a waiver of the previously invoked right. A separate inquiry to determine whether the accused knowingly and intelligently waived his rights is required. *Bradshaw, supra.* When the accused invokes his right to counsel or the right to remain silent, he may be subjected to further interrogation only when:

(1) the accused himself initiates dialogue with the authorities, and

(2) the accused makes a knowing and intelligent waiver of the right he had previously invoked. *Smith, Bradshaw, Edwards, supra.*

The initial inquiry is whether the accused initiated dialogue with the police. An inquiry arising out of the routine incidents of the custodial relationship does not constitute an initiation by the accused. Rather, the accused's act of initiation should represent a desire on the part of the accused to open up a more generalized discussion relating directly or indirectly to the investigation. *Bradshaw, supra.*

If the State establishes that the accused initiated a dialogue with the police after invocation of his right to counsel or the right to remain silent, then the State must also show a valid waiver of the previously invoked right. The knowing and intelligent waiver is based upon the standard enunciated in *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Edwards, supra. See also, James v. Arizona* (1984), ── U.S. ──, 105 S.Ct. 398, 83 L.Ed.2d 332 (dissenting opinion to the denial of certiorari). The waiver must constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. It is dependent upon the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. The waiver determination is made by reviewing the totality of the circumstances, including the fact that the accused initiated the subsequent dialogue with the police. *Bradshaw, Edwards, supra.*[4] If the State can satisfy this dual standard, then the accused's right to remain silent has been scrupulously honored. Therefore, any statements made during the dialogue with the police are properly admissible.

A renewed advisement of all of the *Miranda* rights is not required in order to establish that the defendant knowingly and intelligently waived his previously invoked right to remain silent. Under the totality of circumstances standard, a prior invocation of the right to remain silent can be considered as evidence that the accused is fully aware that he controls when questioning occurs, the subjects discussed, and the duration of the questioning. This evidence is available as proof that he has made a knowing and intelligent decision notwithstanding the inherently coercive pressures of custodial interrogation.

---

**4.** In footnote number 9 the Court indicated that "[i]f, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be 'interrogation'. In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities. *Edwards,* 451 U.S. at 486, 101 S.Ct. at 1885. This waiver standard was reaffirmed by the Court in *Bradshaw,* 462 U.S. at 1044, 103 S.Ct. at 2834.

■ In this case, the dual standard of dialogue initiated by the accused and a knowing and intelligent waiver was clearly met. The defendant told the jail commander that he wished to talk to the detectives about this case. This act demonstrated Phillips' desire for a generalized discussion of the present charges.

While the police did not advise defendant that he had the right to appointed counsel if he could not afford an attorney, they did advise him once again that he had the right to remain silent and that he could terminate questioning at any time. The police recited to Phillips a full advisement of his constitutional rights before his first interrogation. This first interrogation was immediately terminated when defendant invoked his right to remain silent, and the police did not approach defendant to resume interrogation. Rather, Phillips initiated the second dialogue. Appellant stated that he remembered the constitutional rights of which he had been advised three days earlier at the first interrogation. He also indicated that he understood the constitutional rights of which he had been orally advised to him prior to the second interrogation. He then proceeded to talk with the police.

Reviewing the totality of the circumstances, we find that the defendant knowingly and intelligently waived his right to remain silent. The incriminating statement which Phillips gave to the police during the second interrogation was properly admitted into evidence.

## II. Warrantless Arrest at Home

Phillips also argues that the statements which he made to the police should have been suppressed as the fruit of an unlawful arrest. He claims that the police arrested him at his home without a warrant. He maintains that, absent exigent circumstances, the police may not enter a suspect's home to make an arrest without a warrant, citing *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

On October 13, 1983, Phillips accompanied the police from his home to the police station where he was questioned and then booked. The police testified at trial that they did not consider defendant to be under arrest when he was questioned at the police station on the 13th. However, the facts indicate otherwise.

On October 13th, Officers David Becher and Mitch Ely picked up defendant at his mother's house, where he resided. The police knocked on the door and an adult, apparently Phillips' mother, answered the door. The officers were not in uniform, but identified themselves as police officers and showed their badges and identification cards. They advised his mother that they needed to speak with Joe Phillips and were then allowed access to the interior of the residence. The officers again identified themselves as police detectives and asked defendant to come downtown to discuss the homicide of Robert Smith. Defendant responded that he didn't know anything about it. The police then told defendant that a person who appeared to be a principal in the crime had indicated willingness to testify against him. Officer Becher testified that he told defendant that "we wanted him to come downtown with us, and if he wouldn't do so of his own volition then, we'd have to arrest him right then for felony murder and burglary."

Defendant accompanied the police to the station. After being advised of his rights, defendant again stated that he did not know anything about the Smith homicide and invoked his right to remain silent. The police then booked defendant on burglary and murder charges. Probable cause to detain Phillips for seventy-two hours was determined by a judge on October 14th. The police did not obtain a warrant to arrest Phillips until October 18th.

■ An arrest is defined as "the taking of a person into custody, that he may be held to answer for a crime." Ind. Code § 35–33–1–5 (Burns 1985). An arrest has occurred when police officers "interrupt the freedom of an accused and restrict his liberty of movement." *Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 651.

Here, defendant would have been arrested had he declined to accompany the police and was booked for the present charges immediately after he was interrogated at the station. The arrest occurred at his home, where his freedom and liberty of movement had been restricted by the police.

 A warrantless and nonconsensual felony arrest in the accused's home is prohibited by the Fourth Amendment absent probable cause and exigent circumstances. *Payton, supra;* accord, *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38. Although *Payton* did not decide whether an initial consensual entry would justify a subsequent warrantless arrest, subsequent decisions by the Supreme Court indicate that a valid consent to enter the home would justify a subsequent warrantless arrest.[5]

 Entry to effect an arrest and entry to search and seize property implicate the same interest in the preservation of the privacy and sanctity of the home and therefore justify the same level of constitutional protection. *Payton, supra.* Since the breach of the entrance to an individual's home is a fundamental characteristic shared by each intrusion, *id.,* the same standard controls whether the consent was valid and voluntary. Whether a consent to entry is voluntary is therefore a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *See also, United States v. Briley* (8th Cir.1984), 726 F.2d 1301. Consent to entry is generally valid except when it is procured by fraud, duress, fear, intimidation, or when it is merely a submission to the supremacy of the law. *Darnell v. State* (1982), Ind., 435 N.E.2d 250.

 In this case, the facts indicate that the police were given valid and voluntary consent to enter the home of appellant. The police identified themselves to appellant's mother when she answered the door and explained the nature of their visit. The police were then allowed entry into the interior of the home where appellant was located. There is no evidence that the mother's consent was coerced or obtained through deception.

### III. Sufficiency of the Evidence

 Appellant argues that the evidence is insufficient to sustain his conviction. Specifically, he maintains that the reliability of a neighbor's identification and the credibility of an inmate's testimony are suspect. When presented with a challenge to the sufficiency of the evidence, this Court does not reweigh the evidence or evaluate the credibility of the witnesses. Rather, if there is probative evidence to support each element of the offense beyond a reasonable doubt, then the conviction must be affirmed. *Wilson v. State* (1984), Ind., 468 N.E.2d 1373.

 The evidence is sufficient to sustain Phillips' conviction for murder. Virginia Hahn, a neighbor who lives a few houses south of the decedent's residence, saw two men walking in a northerly direction in front of her house at 11 p.m. on October 2, 1983. A very bright street light was situated across the street. She positively identified Phillips in court as one of these men. Furthermore, appellant made several incriminating statements to Gerald Barva, an inmate who shared a cell with Phillips in October, 1983. Phillips told Barva that Lee Drew "snitched on us and got us arrested." Defendant also stated that he and Littlejohn "had their story together", so it would be their word against Drew's. Phillips also told Barva that Litt-

---

5. In *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732, the Court assumed for the purposes of the decision that there was no valid consent to enter the petitioner's home. Footnote 1 at 2094. It also suggested that "on remand, the state courts may consider whether the petitioner's arrest was justified because the police had validly obtained consent to enter his home." Footnote 15 at 2100. The Court also indicated that a consent obtained by deception is a circumstance of an arrest which would violate *Payton,* in *United States v. Johnson* (1982), 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202.

lejohn disposed of the gun by selling it. Derrick Hinton bought a .44 caliber magnum revolver from Littlejohn on October 7th or 8th. Defendant also admitted that they were ransacking the house. Defendant stated that only he and Littlejohn were inside the room when the killing occurred. Phillips was ransacking the house when he was interrupted by Smith; he fired at the man twice. The evidence is sufficient to sustain his conviction even without Phillips' challenged statement indicating that he was in the house the night the crime was committed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., concurs in result.