Terrance KNIGHT, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8806–CR–517.

Supreme Court of Indiana.

May 14, 1991.

Nathaniel Ruff, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Murder, for which he received a sentence of thirty-four (34) years.

The facts are: Gary, Indiana Police Officer Percey Gordon received information from one Ricky Ballard that he, a person called "Mailman" and a person named Terrance, later identified as appellant, were drinking and using drugs. Appellant was "talking crazy." In time, appellant left the van they were occupying in the company of the victim. A few seconds later Ballard heard several shots and observed appellant running away. Officer Gordon also had received a call from appellant's aunt. Because he knew the family, she asked him to come and get appellant. All of this information was relayed to the detective bureau of the Gary Police Department.

Upon receiving this information, detectives drove to the home where appellant lived with his mother. When they arrived, appellant's mother answered the door and allowed them to enter. She was upset and crying and told the officers that appellant had come home the night before and told her that he had been involved in something serious. He also had told her he needed money to get out of town right away and had used the telephone in an attempt to obtain money to leave town.

Appellant's sister told the officers she had talked with her brother the night before, and she believed he was involved in a killing. Appellant's mother then went upstairs to appellant's bedroom and brought him down to the police officers. Appellant's mother cautioned the officers that they should handcuff appellant for fear that he might try to escape.

On the way to the police station, appellant volunteered that he had nothing to do with the killing but knew who did. Upon arrival at the police station, appellant was read his *Miranda* rights; however, he expressed a desire to speak with his sister before making a statement, which was granted. Appellant then was removed to a cell where he spent the night. The following morning, with appellant's sister present at the station, appellant made his statement to the police in which he confessed to the killing. Officers testified that at that time, appellant did not appear to be intoxicated or under the influence of any drug.

Appellant's sister testified that she made an independent investigation of the incident and that one Eddy Lackland told her that appellant and Ricky Ballard were snorting cocaine and drinking, that Ballard wanted appellant to shoot the victim, but that it was Ballard in fact who did the shooting. Appellant's sister further testified that at the time appellant gave his statement his speech was slurred, he leaned back in his chair putting his head on the table and stated he was hungry, and police told him he could eat after he signed his statement.

Appellant testified that he could remember nothing about making his statement except being hungry and asking if he could have something to eat. He claims he merely was handed some documents to sign and did so without knowing what he was signing.

Appellant claims the court erred in denying his motion to suppress his statement because it resulted from an illegal arrest. Appellant claims the information received by the police department prior to his arrest was insufficient to give them probable cause to effect the arrest. He contends that the only prearrest information was

that relayed by Ricky Ballard to Officer Gordon. He claims that because Gordon was a patrolman and not a detective, his investigatory efforts were done to a large extent on his own time.

Appellant further claims that Ballard should not be considered a reliable informant because he had a considerable criminal record known well to police officers. However, Officer Gordon testified that Ballard often had furnished him with information which turned out to be reliable. Appellant also points to the fact that the information was conflicting as to whether Ballard identified him other than as a person named Terrance and that it is doubtful that his full name of Terrance Knight was ever given to the officers. However, appellant does not prevail on this issue in view of the fact that upon receiving whatever information the detectives in fact did receive, they went directly to appellant's mother's home. Thus, in some manner, appellant had been identified.

 Where, as here, there is valid consent to enter an accused's home and probable cause to arrest occurs after entry, the subsequent arrest is valid. See *Phillips v. State* (1986), Ind., 492 N.E.2d 10, *overruled on other grounds, Moore v. State* (1986), Ind., 498 N.E.2d 1; *Hunt v. State* (1990), Ind.App., 550 N.E.2d 838. Whether the consent to enter is voluntary is a question of fact to be determined from the totality of the circumstances. *Phillips, supra.* In the case at bar, it was appellant's mother's home which was entered and then only upon her invitation. Further, the jury was entitled to deduce from the evidence that appellant's mother conveyed to the officers that her son had in all probability been involved in the killing and she wished them to secure him and take him to the police station. In fact, it was the mother who went upstairs to her son's bedroom and brought him down to the police officers. The entry of the officers into the home clearly was consensual and the information they garnered from appellant's mother and sister after the entry gave them probable cause to arrest appellant. *Id.*

There is ample evidence in this record to support a finding that probable cause in fact did exist at the time appellant was arrested. *See Majko v. State* (1987), Ind., 503 N.E.2d 898.

■ Appellant claims the court erred in denying his motion to suppress his statement because it was involuntary and not knowingly made. The question of the voluntariness of appellant's confession was to be determined considering all the circumstances under which it was given. *Collins v. State* (1987), Ind., 509 N.E.2d 827.

■ Appellant's claim that he was too intoxicated to understand that he was making a confession was understandably not accepted by the trial court in view of the time which had elapsed between the killing and the giving of the confession, which was some twenty-four hours later, during which time there is no evidence that appellant consumed any intoxicating substance. In addition, there was the testimony of the police officers that at the time of making the statement, appellant appeared to be lucid and not under the influence of either drugs or alcohol.

Although appellant's sister's testimony tended to contradict the officers', this was evidence to be weighed by the trial court and not second-guessed by this Court. *Coleman v. State* (1986), Ind., 490 N.E.2d 711. The evidence of the voluntariness of appellant's confession was ample to support the decision of the trial court.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.