Eric M. BRIGGS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0611–CR–488.

Court of Appeals of Indiana.

Sept. 11, 2007.

Karen M. Heard, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Eric M. Briggs appeals his conviction for class A misdemeanor resisting law enforcement. We reverse.

### Issue

The issue is whether the State proved beyond a reasonable doubt that the law enforcement officers who arrested Briggs were lawfully engaged in the execution of their duties.

### Facts and Procedural History

The facts most favorable to the conviction indicate that Briggs rented an apartment in Evansville and allowed Gary Lanville [1] to live with him for several weeks. Briggs then ordered Lanville to leave the apartment. On March 8, 2006, Lanville called the Evansville Police Department to request stand-by assistance while he returned to Briggs's apartment to retrieve his belongings. According to Officer Matthew Knight, the police provide stand-by assistance when "someone believes there's gonna be a problem getting some belongings from another ... their residence or another residence, they call [the police department] to make sure we keep the peace." Tr. at 6–7.

Shortly after 5:00 p.m., Officer Knight and Officer Michael Evans went to Briggs's apartment to provide stand-by assistance to Lanville. They knocked several times and waited several minutes for Briggs to answer the door. According to Officer Knight, Briggs said that he had been sleeping and was "very irate" and yelled and cursed at the officers. Id. at 7.[2] When the officers informed Briggs of the purpose of their visit, he said, "Okay," and turned around and walked off, leaving the door ajar.

The officers entered the unlighted apartment. Officer Knight switched a light on. Briggs turned around, switched the light off, and walked toward the back bedroom, which was "completely blacked out." Id. at 9. Officer Evans asked Briggs to stop. Briggs did not comply. When Briggs disregarded a second request, Officer Evans grabbed his arm. Briggs pulled away. Officer Knight grabbed Briggs's other arm. Briggs pulled away and "took an aggressive stance like he was gonna fight" the officers. Id. at 10. Officer Evans grabbed both of Briggs's arms, "escorted him to a chair and sat him down." Id. Briggs "was still irate and but wasn't yelling at that point." Id. at 11. Officer Evans asked Briggs several times for his name and date of birth, and Briggs refused to answer. Officer Evans asked Briggs to stand up, and Briggs refused. Officer Evans "escorted" Briggs to his feet, and Briggs began to struggle. Id. at 12. The two officers "took him to the ground" and "forcibly got him in handcuffs." Id. Briggs then identified himself. After the officers handcuffed Briggs, Lanville entered the apartment and retrieved his clothing, which Briggs had "bagged up in a suitcase for him" that was "packed and ready to go." Id. at 13, 22.

The State charged Briggs with class A misdemeanor resisting law enforcement. On September 29, 2006, the trial court found Briggs guilty as charged.

### Discussion and Decision

■ Indiana Code Section 35–44–3–3(a) provides in pertinent part, "A person who knowingly or intentionally ... forcibly resists, obstructs, or interferes with a law

---

1. Lanville is referred to as both "Lanville" and "Glanville" in the record.

2. Briggs testified that he worked third shift and that 5:00 p.m. was "the middle of [his] night, essentially[.]" Tr. at 37.

enforcement officer ... while the officer is lawfully engaged in the execution of the officer's duties ... commits resisting law enforcement, a Class A misdemeanor[.]"[3] On appeal, Briggs argues that the State failed to prove either that he forcibly resisted the officers or that the officers were lawfully engaged in the execution of their duties. When presented with a challenge to the sufficiency of the evidence, we do not reweigh the evidence or evaluate the credibility of the witnesses. *Phillips v. State*, 492 N.E.2d 10, 18 (Ind.1986). "Rather, if there is probative evidence to support each element of the offense beyond a reasonable doubt, then the conviction must be affirmed." *Id.*

We agree with Briggs that the State failed to prove beyond a reasonable doubt that Officers Knight and Evans were lawfully engaged in the execution of their duties when they asked him to stop walking toward the back bedroom and grabbed his arms. Assuming, without deciding, that the officers lawfully entered Briggs's apartment without a warrant,[4] we conclude that they had no authority to restrict Briggs's movement in any way.

■ The Fourth Amendment of the U.S. Constitution provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"[5] There are three levels of police investigation, two of which implicate the Fourth

Amendment and one of which does not. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.*

First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. *Brinegar v. United States*, 338 U.S. 160, 175–76 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949). Second, it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 27 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion.

*Id.* (some citations omitted). "[T]o pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Stalling v. State*, 713 N.E.2d 922, 924 (Ind.Ct.App.1999).

---

3. The charging information does not specify the actions that formed the basis for Briggs's resisting law enforcement charge.

4. It is questionable whether Briggs voluntarily consented to the officers' warrantless entry, as the State contends. *Cf. Phillips*, 492 N.E.2d at 18 ("Consent to entry is generally valid except when it is procured by fraud, duress, fear, intimidation, or when it is merely a submission to the supremacy of the law."); Tr. at 38 (Briggs's testimony: "I

opened the door, I saw that they were police officers and I was thinkin' since they were police officers, you know, I had to open my door to 'em and ... and let them come in because of who they were.").

5. Briggs mentions the similarly worded Article 1, Section 11 of the Indiana Constitution but does not raise a separate state constitutional argument.

■ "[T]he third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this type of 'consensual encounter' no Fourth Amendment interest is implicated." *Overstreet*, 724 N.E.2d at 663. "In a consensual encounter, the individual remains free to disregard the police officer and to walk away." *Bovie v. State*, 760 N.E.2d 1195, 1198 (Ind.Ct.App.2002) (citation omitted). "When an individual no longer remains free to leave the officer's presence, an investigatory stop has begun." *Johnson v. State*, 856 N.E.2d 706, 711 (Ind.Ct.App.2005).

■ The State does not dispute Briggs's contention that when the officers entered his apartment, he "was not under arrest, [in] custody, or under suspicion for a crime." Appellant's Br. at 14. As such, their encounter was consensual,· and Briggs remained free to disregard the officers, walk away, or even order them to leave his home.[6] At trial, Officer Evans testified that he asked Briggs to stop walking toward the back bedroom because, "you know, it's America. People have the right to keep and bear arms and I [didn't] know what's in that dark apartment." *Id.* at 26. Officer Evans got it half right: not only do Americans enjoy a constitutional right to keep and bear arms, but they also enjoy a constitutional right to be secure in their persons and private dwellings against unreasonable intrusions by government agents. Here, the officers detained Briggs based solely on a hunch that he could have a weapon in his bedroom. This amounted to an unreasonable seizure in violation of the Fourth Amendment. *See State v. Atkins*, 834 N.E.2d 1028, 1033 (Ind.Ct.App. 2005) ("Officer safety is always a legitimate concern, but standing alone officer safety cannot form the basis for a valid investigatory stop."), *trans. denied.*[7]

6. The dissent contends that this factual situation does not "fit neatly" into any of the three categories of police investigation and thus "represents something of a hybrid." Op. at 134. We are unaware of any other "hybrid" situations in search-and-seizure jurisprudence. Either the Fourth Amendment was implicated here, or it was not. Absent any reasonable suspicion or probable cause to believe that criminal activity was afoot, we conclude that it was not. Even if, as the dissent suggests, Briggs consented to the officers' entry into his home "to facilitate Lanville's peaceful retrieval of his property from Briggs's residence[,]" *id.* at 134, we cannot agree that Briggs thereby voluntarily waived his Fourth Amendment right against the unreasonable seizure of his person. Stated differently, we are not prepared to hold that Briggs's constitutional right to walk away from the officers was more limited inside his own home than it would have been on a public street.

7. The dissent points to the volatility of Briggs and Lanville's relationship and Briggs's agitation upon answering the door and states that "the matter of officer safety was a valid concern." Op. at 135. We first observe that these facts are insufficient to give rise to a reasonable suspicion, let alone probable cause, to believe that criminal activity might have been afoot when the officers entered Briggs's home. This situation is entirely different from a police response to a report of domestic violence, where possible criminal activity has already occurred. We further reiterate that "standing alone officer safety cannot form the basis for a valid investigatory stop." *Atkins*, 834 N.E.2d at 1033; *see also Terry*, 392 U.S. at 32–33, 88 S.Ct. 1868 ("Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away; he certainly need not submit to a frisk for the questioner's protection.") (Harlan, J., concurring). If police departments are willing to provide stand-by assistance in potentially volatile situations, then they must also be willing to uphold the consti-

Therefore, we conclude that the officers were not lawfully engaged in the execution of their duties and reverse Briggs's resisting law enforcement conviction for insufficient evidence.

Reversed.

BAKER, C.J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I disagree that this was a consensual encounter, and therefore respectfully dissent from the majority's reversal of the conviction on that basis.

In order to attain a conviction, the State was required to show the police officers' actions were consistent with the Fourth Amendment. In this context, that means the State had to prove beyond a reasonable doubt the fourth element of this offense, i.e., that Officers Knight and Evans were lawfully engaged in the execution of their duties as officers. The majority relegates to a footnote the discussion of the legality of Officers Knight and Evans's entry into Briggs's apartment, and therefore deems that issue as marginally important at best. I, on the other hand, believe it is of primary importance. Indeed, much of Briggs's argument on this point hinges upon his claim that the officers entered his apartment illegally. I cannot agree.

Briggs answered the door when the officers knocked and, after some initial angry outbursts, he eventually calmed down and listened to the explanation of why they were there, i.e., to facilitate Lanville's retrieval of his property from Briggs's residence. He responded by saying "Okay",

leaving the door wide open, and turning and walking toward the rear of his apartment. *Appellant's Appendix* at 31. I can see this as nothing less than consent to enter his residence for the stated purpose. Therefore, the officers were legally present in Briggs's apartment.

The legality of the officers' presence, however, does not end the inquiry. The majority holds that, irrespective of the legality of the entry, the situation created a consensual encounter between Briggs and the police. In such case, as Briggs puts it, "[he] was under no duty to obey all of the orders of the officers." *Appellant's Brief* at 6. *See Bovie v. State*, 760 N.E.2d 1195, 1198 (Ind.Ct.App.2002) ("[i]n a consensual encounter, the individual remains free to disregard the police officer and to walk away"). The consensual encounter described in *Bovie* is listed as one of the three alternative levels of police investigation, with the other two levels being a detention based upon probable cause and an investigatory stop based upon reasonable suspicion. *Bovie v. State*, 760 N.E.2d 1195. The majority holds that we must place the instant situation into one of those three categories and apply the legal principles appropriate thereto. In my view, however, this situation does not fit neatly into any of those categories, but instead represents something of a hybrid.

Officers were not present to investigate wrongdoing, so the latter two situations are not apposite. Nevertheless, this was something more than a mere casual encounter. The officers informed Briggs that they were there to facilitate Lanville's peaceful retrieval of his property from Briggs's residence. By acknowledging their purpose and the role they would play,

tutional rights of all citizens involved. Our decision should not be interpreted to mean that police officers are powerless to protect themselves in such situations; rather, it

means that a citizen cannot be convicted of resisting an officer who acts unlawfully under the guise of personal safety.

and by permitting them to enter his residence, Briggs submitted to such authority as was reasonably required to accomplish their purpose. This involved, at a minimum, obeying their commands with respect to his movements in the apartment while Lanville was present. The officers were aware that the relationship between Lanville and Briggs was volatile and that Briggs was obviously highly agitated. They were also aware that Lanville's property was located in Briggs's bedroom, and thus reasonably sought to prevent Briggs from entering that room while Lanville was there. Moreover, beyond the precaution of keeping Briggs and Lanville from getting near each other to prevent physical violence between those two, the matter of officer safety was a valid concern. That is, in view of the volatility of the situation and the level of Briggs's agitation, the officers reasonably sought to restrict Briggs to the room in which they were located for the short time they would be there.

I reiterate that, in my view, the critical fact here is that Briggs consented to the officers' presence and acquiesced to their purpose for being there. Of course, such consent was not required. If Briggs had simply shut the door in response to their request, they would have been powerless to pursue the matter any further. But, he did not deny them access; he agreed to their request and they entered with his permission. What then? The majority's approach renders the ensuing interaction a consensual encounter, which in turn would leave the officers powerless to play any meaningful role. As would have been true here, they would not even have had authority to protect their own safety, because they would not have been able to prevent an angry man in a volatile situation from walking into his bedroom and possibly retrieving a weapon.

Clearly, today's holding renders police officers mere bystanders in domestic disputes in which they have been called upon to prevent violence where it has not yet erupted. Those situations evidently arise often enough to have caused this police department to give its role a name, i.e., stand-by assistance, and to have formulated standard procedures therefor. No doubt, many police departments across the state have similar procedures. If they must wait until violence erupts to intervene, thereby placing themselves in harm's way in the process, one wonders whether stand-by assistance will be offered in the future.

I understand that when confronted with situations such as this, a person in Lanville's position could seek a court's intervention, which in turn would empower police officers to enforce whatever order might be issued. Today's decision seems to clarify that the only recourse in domestic disputes such as this is legal redress in a court of law. Unfortunately, that avenue takes time and costs money. No doubt, resort to a court may be necessary in some cases, but in my opinion is not necessary where, as here, both parties consent to police officers supervising the situation.

In summary, I believe Officers Knight and Evans were lawfully engaged in the execution of their duties as officers and Briggs voluntarily submitted to their limited authority to take whatever actions were reasonably necessary to facilitate the peaceful retrieval of Lanville's property from Briggs's residence. This included the authority to restrict Briggs's movements while Lanville was present. Therefore, in my view, the evidence was sufficient to prove the officers were lawfully engaged in the execution of their legal duties during the incident in question.

Having decided Briggs was required to obey the officers' reasonable commands, it

remains to address the remaining issue, which is whether the evidence was sufficient to show that he used force in resisting law enforcement. When considering a challenge to the sufficiency of evidence supporting a conviction, we neither re-weigh the evidence nor judge witness credibility. *McHenry v. State,* 820 N.E.2d 124 (Ind.2005). This review "respects 'the [fact-finder]'s exclusive province to weigh conflicting evidence.'" *Id.* at 126 (quoting *Alkhalidi v. State,* 753 N.E.2d 625, 627 (Ind.2001)). Considering only the probative evidence and reasonable inferences supporting the judgment, we must affirm "'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" *McHenry v. State,* 820 N.E.2d at 126 (quoting *Tobar v. State,* 740 N.E.2d 109, 111–12 (Ind.2000)).

A private citizen may not use force in resisting an individual who he knows, or has reason to know, is a police officer performing his duties. Ind.Code Ann. § 35–44–3–3 (West, PREMISE through 2007 Public Laws, approved and effective through April 8, 2007). *Shoultz v. State,* 735 N.E.2d 818 (Ind.Ct.App.2000), *trans. denied.* The forcible nature of the alleged resistance, obstruction, or interference is an essential element of the misdemeanor offense of resisting law enforcement, and therefore the State is required to prove that element at trial. *Miller v. State,* 634 N.E.2d 57 (Ind.Ct.App.1994). The "forcibly resists" element is not satisfied if a defendant does nothing more than stand his or her ground. *Ajabu v. State,* 704 N.E.2d 494 (Ind.Ct.App.1998). Rather, "force" is used in this context when an individual directs strength, power, or violence toward police officers, or when he or she makes a threatening gesture or movement in their direction. *Wellman v. State,* 703 N.E.2d 1061 (Ind.Ct.App.1998). Also,

"force" in this context may include refusing to arise or move where directed, so as to require officers to forcibly move the defendant from one place to another or to lift him onto his feet. *See, e.g., Ajabu v. State,* 704 N.E.2d 494.

In the instant case, Officers Knight and Evans testified that Briggs forcefully pulled out of their grasp and adopted an aggressive posture "like he was gonna fight" them. *Appellant's Appendix* at 34; *see Wellman v. State,* 703 N.E.2d 1061. Moreover, the officers were later required to lift Briggs to his feet when he refused to stand. *See Ajabu v. State,* 704 N.E.2d 494. This evidence was sufficient to prove the "forcibly" element of resisting law enforcement.

I would affirm the conviction.