Marvelean **WILLIAMS**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A02–1105–CR–418.

Court of Appeals of Indiana.

Dec. 30, 2011.

Ruth Johnson, Suzy St. John, Marion County Public Defender, Appellate Division, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Indianapolis Metropolitan Police officers were dispatched to Marvelean Williams's home to investigate a disturbance. Williams interfered with the investigation by yelling and ignoring orders to remain seated. Although Williams was not suspected of being involved in the initial disturbance, after her husband was arrested, the officers became concerned when she attempted to go into the kitchen that she might retrieve a weapon, and they decided to place her in handcuffs while they continued their investigation. When Williams resisted their efforts to handcuff her, she was arrested for resisting law enforcement. After a bench trial, Williams was convicted. On appeal, Williams argues that there is insufficient evidence that the police were lawfully engaged in their duties when they handcuffed her. Because the sole case that she relies on is distinguishable, we conclude that Williams has not shown that her conviction must be overturned. Therefore, we affirm.

### Facts and Procedural History

On January 4, 2011, Officers Dennis Lowe and Francisco Olmos were dispatched to Williams's home due to a reported "disturbance" or "assault" involving two men and a woman. Tr. at 7, 16. When the officers arrived six people were in the home. Two additional officers remained outside the residence to provide backup. Officers Lowe and Olmos asked everyone to sit down and started taking statements. Williams was "screaming, yelling, flailing her arms, [and] making the scene more chaotic." *Id.* at 17. Both officers felt that she was impeding their investigation because they "had to pay more attention to her rather than getting information." *Id.* at 10. At some point, the officers decided to arrest Williams's husband for battery, and Williams became even more belligerent. She got up several times despite the officers' orders to remain seated. She tried to go to the kitchen, and the officers were concerned that she might get a knife or some other object that could be used as a weapon.

The officers decided to place Williams in handcuffs for their safety. She resisted their efforts to handcuff her by "flipping her arms around" and pulling away. *Id.* at 10. She continued yelling, cursing, and threatening to sue the officers. Once the officers succeeded in handcuffing her, they decided to move her to the porch. Williams "planted her feet and refused to comply." *Id.*

Williams was arrested and charged with resisting law enforcement as a class A misdemeanor. The case was tried to the bench on April 18, 2011. The officers testified to the foregoing facts. Williams presented the testimony of her husband and her husband's uncle, who both denied that Williams disrupted or resisted the officers. The trial court found her guilty as charged. Williams now appeals.

### Discussion and Decision

Williams argues that the evidence was insufficient to support her conviction. Pursuant to Indiana Code Section 35–44–3–3(a)(1), a person commits resisting law enforcement if the person "forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties." When reviewing the sufficiency of the evidence, we do not reweigh the evidence or evaluate the credibility of witnesses.

*Stewart v. State,* 945 N.E.2d 1277, 1291 (Ind.Ct.App.2011), *trans. denied.* We look only to the evidence supporting the judgment and the reasonable inferences to be drawn therefrom. *Id.* We will affirm if there is substantial evidence of probative value supporting each element of the offense. *Wright v. State,* 828 N.E.2d 904, 906 (Ind.2005).

Williams argues that there is insufficient evidence that the officers were lawfully engaged in the execution of their duties. She relies solely on *Briggs v. State,* 873 N.E.2d 129 (Ind.Ct.App.2007), *trans. denied.* Eric Briggs had allowed Gary Lanville to live in his apartment for several weeks and then asked him to leave. Lanville contacted the police and requested "stand-by assistance" while retrieving his personal belongings from Briggs's apartment. *Id.* at 131. Two officers accompanied Lanville to the apartment to help "keep the peace." *Id.* Although Briggs was very angry, when the officers informed him of the purpose of their visit, he said, "Okay," and walked away, leaving the door ajar. *Id.* Briggs started walking toward his bedroom. Concerned that Briggs could be retrieving a weapon, the officers entered his residence and ordered him to stop, but Briggs ignored them. The officers tried to grab him, but he pulled away. Eventually, they forcibly placed him in handcuffs. Briggs was charged with and convicted of resisting law enforcement.

On appeal, we concluded that there was insufficient evidence that the officers were lawfully engaged in the execution of their duties when they ordered him to stop and grabbed his arms. *Id.* at 134. Because the encounter was consensual, we held that he was free to disregard the officers or even order them to leave his home. *Id.* at 133. A mere hunch that Briggs could have a weapon in his bedroom was not a sufficient basis for detaining him. *Id.* There-fore, we reversed his conviction of resisting law enforcement.

Williams does not claim that the police were unlawfully present in her home. *Cf. id.* at 132 & n. 4 (assuming without deciding that police had obtained Briggs's consent to enter his apartment). Nor does she dispute that the officers were investigating a report of a disturbance, and not merely providing stand-by assistance. *See id.* at 133 n. 7 (noting that outcome could have been different if police had been responding to a report of domestic violence). *Briggs* does not discuss the extent of an officer's power to control the scene while conducting a criminal investigation. The situation here also presented a greater safety risk to the police than that in *Briggs,* where we found that danger was only speculative and no arrest had yet been made. In this case, the police were dispatched to a scene where they were outnumbered and violence had already erupted once. Williams did not merely walk away from the police, as Briggs did, but was actively interfering with the officers' investigation. Williams has not cited any authority to convince us that the officers acted unlawfully when they handcuffed her for safety reasons while they conducted their investigation, and we are not aware of any such authority. Police have a legal right to take reasonable steps to stabilize a situation such as this during the course of their investigation. This is so for both the safety of the officers as well as the citizens present. Therefore, we affirm her conviction.

Affirmed.

MAY, J., and BROWN, J., concur.