## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2015, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Suzy St. John
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robin Maze,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 11, 2015

Court of Appeals Case No.
49A02-1503-CR-162

Appeal from the Marion Superior Court

The Honorable Linda Brown, Judge

Trial Court Cause No.
49G10-1412-CM-55386

**Pyle, Judge.**

Robin Maze ("Maze") appeals her conviction for Class A misdemeanor resisting law enforcement.[1] On appeal, she argues that there was insufficient evidence to support her conviction because the officers involved in her arrest were not lawfully engaged in the execution of their duties. Concluding that the officers were lawfully impounding her car at the time she resisted, we affirm her conviction.

We affirm.

## Issue

Whether sufficient evidence supports Maze's conviction.

## Facts

At 3:00 a.m. on December 17, 2014, Officers Scott Yaden ("Officer Yaden") and Jeremy Jones ("Officer Jones") of the Indianapolis Metropolitan Police Department were dispatched to the area of Barth Avenue and Beecher Street in Marion County. The dispatch involved an illegally parked car that was blocking traffic. When the officers arrived, they observed a white Jeep parked three feet from the curb and facing east in the westbound lane on Beecher Street. The officers also described the Jeep as parked "about three feet into the intersection" of Barth Avenue and Beecher Street. (Tr. 9). The officers checked the registration on the Jeep and learned that it was registered to Maze. The officers then approached her door in order to get her to move the Jeep.

---

[1] IND. CODE § 35-44.1-3-1(a)(1).

[4] The officers knocked on Maze's door, and Maze's German Shepherd began barking. Officer Yaden called out for Maze, and she answered the door after about three minutes. When Maze opened the door, she yelled at the officers for waking her up. In addition, the officers observed that her eyes were bloodshot and glassy; they also smelled the odor of an alcoholic beverage on her breath. Maze also slurred her speech while speaking with the officers.

[5] The officers informed Maze that her Jeep was illegally parked and needed to be moved. However, the officers would not let Maze move the Jeep herself because she exhibited signs of intoxication. Officer Yaden told Maze that he would move the vehicle for her if she gave him the keys. Maze then invited the officers into her home to help search for the keys. While the officers searched Maze's home, she looked inside of her Jeep. Still, no one found the keys. After about fifteen minutes, the officers informed Maze that they were going to tow her vehicle and asked her to go back into her house.

[6] The officers returned to their vehicle to issue a ticket and begin the process of towing the vehicle. Maze did go in her house, but she eventually ran back outside and yelled, "You are not towing my vehicle" and entered the Jeep through the driver's side door. (Tr. 17, 37-38). Maze's German Shepherd also came out of the house and circled Officer Yaden, barking at him and "snipping" at his leg. (Tr. 27). Officer Yaden took out his Taser and turned toward the dog, and it ran away.

Officer Jones ordered Maze out of the vehicle, but she refused to exit. Officer Yaden then grabbed Maze by her left arm to remove her from the Jeep. However, Maze grabbed the steering wheel with her right hand, preventing her removal from the Jeep. The officers eventually got Maze out of the vehicle, and she began to swing her arms, preventing the officers from placing handcuffs on her. The officers eventually pinned Maze against the Jeep and placed her in handcuffs. While Maze was in custody, her dog was still loose and running around. The officers attempted to get the dog back in the house, but it became aggressive and charged at Officer Yaden. At that time, he used his Taser on Maze's dog.

On December 17, 2014, the State charged Maze with resisting law enforcement as a Class A misdemeanor and public intoxication as a Class B misdemeanor. After a bench trial was held on February 24, 2015, the trial court found Maze guilty of resisting law enforcement but not guilty of public intoxication. Maze now appeals.

## Decision

Maze appeals her resisting law enforcement conviction and argues that insufficient evidence supports her conviction. Specifically, she alleges that Officers Yaden and Jones were not lawfully engaged in the execution of their duties at the time she resisted.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is

the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

[10] To convict Maze of resisting law enforcement as charged, the State had to prove that she forcibly resisted, obstructed, or interfered with Officer Jones or Yaden while they were lawfully engaged in the execution of their duties. (App. 13); I.C. § 35-44.1-3-1(a)(1).

[11] Here, Maze's only contention is that the officers were not lawfully engaged in their duties when she resisted the officers' attempt to remove her from the Jeep. She attempts to frame her argument as a "continuous episode of unreasonable police activity" that violated the Fourth Amendment. (Maze's Br. 6). However, the relevant inquiry involves the encounter at Maze's Jeep and whether Officers Yaden and Jones were lawfully executing their duties when she physically resisted her removal from her vehicle.

[12] Maze compares her case to *Briggs v. State*, 873 N.E.2d 129 (Ind. Ct. App. 2007), *trans. denied*. There, Briggs had allowed a friend to live in his apartment for several weeks until Briggs eventually asked him to leave. *Id*. at 131. The friend contacted the police and requested "stand-by assistance" while retrieving his personal belongings from Briggs's apartment. *Id*. Two officers came to the apartment to help "keep the peace." *Id*. Although Briggs was very angry, when the officers informed him of the purpose of their visit, he said, "Okay," and walked away, leaving the door ajar. *Id*. Briggs started walking toward his bedroom. *Id*. Concerned that Briggs could be retrieving a weapon, the officers entered his residence and ordered him to stop, but Briggs ignored them. *Id*. The officers tried to grab him, but he pulled away. *Id*. Eventually, they forcibly placed him in handcuffs. *Id*. Briggs was charged and convicted with resisting law enforcement, and he appealed.

[13] On appeal, we concluded that there was insufficient evidence that the officers were lawfully engaged in the execution of their duties when they ordered him to stop and grabbed his arms. *Id*. at 134. Because the encounter was consensual, we held that he was free to disregard the officers or even order them to leave his home. *Id*. A mere hunch that Briggs could have a weapon in his bathroom was not a sufficient basis for detaining him. *Id*.

[14] *Briggs* is distinguishable from the case before us because Officers Yaden and Jones were in the process of impounding Maze's Jeep when Maze yelled at the officers and jumped inside the vehicle. While Briggs's movement was restricted

by the officers while inside of his home, Maze actively inserted herself into the officers' process of towing her Jeep.

[15] We further note that Maze does not attack the propriety of impounding of her vehicle. Rather, she tacitly concedes that impoundment was proper by suggesting the officers should have towed the vehicle when they arrived rather than knocking on her door and asking her to move it. Maze further argues, "[b]eing in the car did not obstruct the officers' duties when the tow truck had not yet arrived." (Maze's Br. 14). However, Maze cites no authority requiring the officers to let her sit in her vehicle before the tow truck arrived. In addition, given that she entered her Jeep and told the officers they were not going to tow it, the reasonable inference is that she was not leaving her vehicle voluntarily. Thus, Maze's reliance on *Briggs* fails, and the officers here were lawfully engaged in their duties when she resisted. Accordingly, we affirm Maze's conviction for resisting law enforcement.

[16] Affirmed.

Vaidik, C.J., and Robb, J., concur.