# FOR PUBLICATION



FILED

Feb 05 2013, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**PHILLIP L. MILLER**
Leatherman & Miller
Goshen, Indiana

**NANCY A. MCCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IGNACIO PEREZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1206-CR-247 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT 3
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-0909-FA-40

February 5, 2013

OPINION – FOR PUBLICATION

**BAKER, Judge**

In this interlocutory appeal, the appellant-defendant, Ignacio Perez, challenges the trial court's denial of his motion to suppress evidence that police officers seized from his person and his residence.

Notwithstanding Perez's arguments, we find that the detention, arrest, and search incident to that arrest were reasonable and did not violate Perez's right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution. Moreover, we conclude that a "dog sniff" outside Perez's residence was reasonable, and that there was probable cause for the issuance of a search warrant. Thus, the seizure of cocaine from Perez's residence was proper and the trial court properly denied his motion to suppress.

Finally, we conclude that there was no violation of Perez's rights under Article I Section 11 of the Indiana Constitution. We therefore remand this cause for trial.

FACTS

On August 18, 2009, an undercover officer with the Elkhart Police Department's Interdiction and Covert Enforcement (ICE) unit purchased 453 grams of marijuana and 29 grams of cocaine from an individual named Concepcion Avalos-Cortez. The officer and Cortez completed this transaction at a carwash in Elkhart. After the officer purchased the marijuana, Cortez stated that another individual would deliver the cocaine to the carwash.

At some point, an older-model blue Dodge Caravan arrived, and Cortez entered the van. He emerged and handed the officer 29 grams of cocaine. It was subsequently

2

discovered that the van was registered to Jaime Galvez in South Bend. However, after several trips to Galvez's residence and hours of surveillance, the officers were not able to determine that the vehicle was registered to that particular resident.

Two days later, the undercover officer arranged to purchase more cocaine from Cortez. When the officer first arrived at the car wash where the original transaction had occurred, Cortez informed the officer that his cocaine supplier was running late but would deliver the drugs shortly.

Thereafter, when the police officer observed a maroon Ford F-150 truck parked behind Cortez, it was determined that this truck was also registered to Jaime Galvez at the same address. The officer again purchased 29 grams of cocaine from Cortez. The officer had reason to believe Cortez received the drugs from the person in the truck. During hours of surveillance at the registered address, police never saw the truck arrive at or leave the residence.

On August 31, the undercover officer again arranged to purchase 15 grams of cocaine from Cortez. The same maroon truck was at the car wash during this transaction, and the officer again believed that the cocaine had been provided by the person in the truck. Officers from ICE followed the truck directly from the car wash to Perez's residence.

The following day, the police began surveillance of Perez's residence. The blue Dodge minivan that was used in the controlled buy on August 18 was seen at Perez's residence, and a records search revealed that Perez owned the residence. The police

3

obtained a photograph of Perez from the Bureau of Motor Vehicles (BMV) and discovered that Perez had a handgun permit. The officers believed that the individual delivering cocaine to Concepcion at the car wash might be obtaining the cocaine from Perez's house.

The next day, the undercover officer again purchased 15 grams of cocaine from Cortez at the car wash. The officer then asked Cortez if he could obtain an additional one-and-one-half ounces of cocaine. Cortez told the officer that he could obtain the cocaine within an hour. Cortez remained at the car wash. At some point, a white Ford truck registered to Perez arrived, and the driver met with Cortez for about five minutes. After Perez's truck left, Cortez contacted the undercover officer and informed him that he had the cocaine and arranged to meet. The police officers then followed Cortez, stopped his vehicle, and seized one-and-one-half ounces of cocaine from the truck.

After arresting Cortez, the police officers went to Perez's residence. Captain Turner from ICE asked Indiana State Police Trooper Mick Dockery and his canine that had assisted in the traffic stop and the arrest of Cortez, to accompany the officers to Perez's residence and remain nearby in case a uniformed officer was needed.

Captain Turner and another officer arrived at Perez's home and knocked on the front door. The officers saw two surveillance cameras at the front of Perez's house pointed at the front door and driveway. From their training and experience, the officers recognized that these types of surveillance systems are commonly used by drug traffickers at their drug locations.

4

Perez answered the door, asked the officers to wait while he disarmed his residential alarm system, and stepped out onto the porch to speak with the officers. The police officers clearly identified themselves to Perez as law enforcement officers, and Perez locked the door behind him as he stepped onto the porch.

Even though the officers recognized him from his BMV photograph, the officers asked Perez his name. Perez responded, "why"? State's Ex. p. 4. The officers then explained to Perez that a white truck registered to him had been used to deliver cocaine earlier that day. However, Perez lied to them and denied owning the truck. He also denied having any drugs in the house. While speaking with the officers, Perez was nervous and agitated, breathing heavily, and pacing back and forth with his arms folded. During the conversation, Perez walked down from his porch, past the officers, and onto an adjacent patio. The officers remained on the porch steps, which were now between Perez and the front door. Captain Turner radioed Trooper Dockery to come to the scene because Perez was "belligerent." State's Ex. 1.

Captain Turner told Perez that he was going to obtain a search warrant for the residence. The other officers saw Perez's wife at the front door and asked her to step outside. When Perez's wife opened the door, Perez started screaming at her in Spanish and moved back toward the officers at the door of his residence. The officers told Perez to stop, and Captain Turner stood with his arms in the air telling Perez to back up. The police officers did not touch Perez, but he approached them and started to "chest bump"

5

the officers. Perez also attempted to break past them and move toward the front door. Tr. p. 79, 88.

Captain Turner told Trooper Dockery to handcuff Perez. Trooper Dockery, who had arrived in a patrol car and was dressed in uniform, stepped in front of Perez, pulled out his handcuffs, and attempted to place them on Perez. However, Perez repeatedly pulled his arm away and moved backwards towards the driveway. Trooper Dockery pressed Perez against a parked SUV and tried to handcuff him again. Perez fought back, grabbed Trooper Dockery's gun, and the two wrestled to the ground in front of the SUV.

Perez was arrested for resisting law enforcement. When Perez was searched, the police discovered over $1000 cash in Perez's pocket, $260 of which had been used by ICE to buy cocaine that day. The canine then conducted a "sniff" of Perez's front door. Tr. p. 80. The front door was closed at the time, and the canine alerted to the presence of illegal narcotics.

Perez's wife informed the officers that several vehicles were parked in the garage, including a white truck. She also told the officers that no one else was in the home. The police then secured a search warrant for Perez's house at 12:10 a.m. on September 3, 2009.

During a search of the residence, the police discovered over eighty grams of a powdery substance that field tested positive for cocaine, a semiautomatic handgun, ammunition, two digital scales, six open boxes of plastic bags, and over $2400 cash in the master bedroom.

6

On September 9, 2009, the State charged Perez with dealing in cocaine, a class A felony, and resisting law enforcement, a class A misdemeanor. Thereafter, Perez filed a motion to suppress, alleging that "all evidence seized . . . or obtained by law enforcement authorities as a result of said unreasonable detention and subsequent search of [his] person and home should be suppressed as a result of the violation of [his] Constitutional rights under the 4th Amendment to the United States Constitution and under Article I, Section 11 of the Indiana Constitution, and pursuant to the 'Fruit of the Poisonous Tree' doctrine as announced by the United States Supreme Court." Appellant's App. p. 41.

Following a hearing on November 10, 2011, the trial court denied Perez's motion to suppress. The trial court determined, among other things, that the police had reasonable suspicion to detain Perez to complete their investigation, and that Perez's arrest for resisting law enforcement was lawful. As a result, the trial court determined that any evidence seized as a result of his arrest was admissible at trial.

It was further determined that because the police officers were lawfully on the premises, it was lawful for the dog to sniff the residence. Thus, based on the results of that sniff, it was reasonable for the police officers to obtain a search warrant for Perez's house and search it. Perez now brings this interlocutory appeal, challenging the validity of his detention by police officers and the subsequent search of his residence.

## I.  Standard of Review

We conduct a de novo review of a trial court's ruling on the constitutionality of a search or seizure.  Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008).  However, the standard of review in a motion to suppress is similar to other sufficiency issues.  Jackson v. State, 785 N.E.2d 615, 618 (Ind. Ct. App. 2003).  We will consider the evidence most favorable to the ruling to determine whether there is substantial evidence of probative value to support the denial of the motion.  Id.

## II.  Perez's Claims

Perez argues that the evidence must be suppressed because the police illegally detained him and subsequently placed him in handcuffs.  Therefore, Perez contends that his arrest for resisting law enforcement was unlawful and the subsequent search of his person violated his right to be free from unreasonable search and seizure.  Perez also claims that there was no probable cause to issue the search warrant for his residence and that the evidence seized during the search of his residence was unlawful.

## A.  Initial Stop

In addressing Perez's arguments, we note that there are three levels of police investigation, only two of which implicate the Fourth Amendment to the Constitution: (1) an arrest, requiring probable cause to believe that the person has committed a crime; (2) an investigative stop, requiring reasonable suspicion that criminal activity may be occurring or about to occur; and (3) a consensual encounter that does not amount to either an arrest or a seizure.  Overstreet v. State, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000).  A

consensual encounter occurs when a person remains free to disregard the officer's questions and walk away, whereas an investigatory stop involves a brief compulsory detention that the person is not free to disregard. Bovie v. State, 760 N.E.2d 1195, 1198 (Ind. Ct. App. 2002).

In this case, it is apparent that the encounter began consensually. More specifically, the police officers approached Perez's front door through the publicly accessible route and began conversing with him. Perez does not dispute that the police were permitted to knock on his front door to ask him questions or that he voluntarily stepped out on the porch to speak to the police. Rather, Perez maintains that the encounter developed into an illegal seizure when the police prevented him from reentering his home and detained him by placing him in handcuffs.

In support of this claim, Perez relies on this court's opinion in State v. Atkins, 834 N.E.2d 1028, 1032 (Ind. Ct. App. 2005. Appellant's Br. p. 24. In Atkins, it was determined that an investigatory stop may not be conducted on private property because the standard announced in Terry v. Ohio, 392 U.S. 1 (1968) applies only to encounters "between a citizen and a police officer on a public street." Atkins, 834 N.E.2d at 1032.

However, in Hardister v. State, the evidence showed that police officers went to the defendant's residence to conduct a "knock and talk" investigation in response to an anonymous tip that drugs were being cooked in the home. 849 N.E.2d 563, 570 (Ind. 2006). When the occupants responded to the police presence by fleeing toward the rear of the house, which police observed through a window, it was determined that the

officers had reasonable suspicion to stop the suspects. Id. at 570-71. The police officers proceeded to the side of the house to seize the occupants that they expected to exit the rear of the house. Id. at 571.

Our Supreme Court rejected the defendant's claim that the police officers should have had probable cause and a warrant to invade the curtilage of the residence. In light of this disposition, it is apparent that our Supreme Court has contemplated that a knock and talk encounter may evolve into an investigatory stop on private property. Moreover, police intrusion upon such private property was approved to conduct the investigatory stop. As a result, we reject Perez's argument that his detention was unconstitutional merely because police officers were on his property.

### B. Reasonable Suspicion and Detention

We also note that the police had reasonable suspicion that criminal activity was afoot and, therefore, could lawfully detain Perez. Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Williams v State, 754 N.E.2d 584, 587 (Ind. Ct. App. 2001). The police have the legal right to take reasonable steps to stabilize a situation such as this during the course of their investigation. Williams v. State, 959 N.E.2d 357, 359 (Ind. Ct. App. 2011), trans. denied. This includes placing an individual in handcuffs to enable the officers to conduct their investigation and ensure their own safety or the safety of others. Safety concerns of

10

a police officer are a legitimate and weighty justification for such an intrusion. <u>Delatorre v. State</u>, 903 N.E.2d 506, 508 (Ind. Ct. App. 2009).

Here, the evidence shows that the police officers first sought only to detain Perez and not arrest him. Nonetheless, it was established that Perez's residence had been linked to multiple sales of cocaine and that a truck registered to him had been used in a drug sale earlier that day. State's Ex. 1. As discussed above, Perez had surveillance cameras and an alarm system at his house, which is common among drug traffickers. The police also suspected that Perez might be armed because he had a handgun permit.

Perez also displayed an unusual preoccupation with excluding the police from his home. More particularly, Perez closed and locked his front door as he stepped out to speak with police, walked away from his door while speaking to the officers in an attempt to lure them away from the door, yelled repeatedly at his wife when she opened the door, and attempted to force his way past the officers to return into his home when his wife started to exit. Tr. p. 37-39, 40, 55, 57. Perez was also agitated, nervous, angry, and belligerent, and he paced back and forth with his arms crossed while talking to the police officers. <u>Id.</u> at 87. Perez also lied to police officers about owning the white truck that was used in the earlier drug buy. <u>Id.</u> at 50-51, 54. Moreover, we note that when Perez started to yell at his wife in Spanish, the police officers did not know if Perez was ordering his wife to return to the house to retrieve a weapon or destroy the drugs they suspected were in the home. Thus, it was reasonable for the police to detain Perez and

11

place him in handcuffs to control the scene and to protect themselves and potential evidence while they conducted their investigation.

### C. Arrest and Search Incident Thereto

The evidence also demonstrated that Perez forcibly resisted Trooper Dockery's attempt to place him in handcuffs. Perez repeatedly pulled his arm away from Trooper Dockery, fought with him, and attempted to grab his gun. Tr. p. 79, 90-92. The two wrestled to the ground and Trooper Dockery's canine had to seize Perez's arm before Perez agreed to stop resisting. This forcible resistance constituted the offense of resisting law enforcement and provided probable cause for Perez's arrest. I.C. § 35-44.1-3-1(a)(1).

When Perez was searched, the police discovered cash in Perez's pants pocket that had been used earlier that afternoon in a controlled buy. Perez only disputes the legality of the arrest and does not challenge the validity of the search incident to his arrest. Notwithstanding Perez's claim, a citizen may not use force to resist a peaceful arrest by an individual he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful. Cole v. State, 878 N.E.2d 882, 886-87 (Ind. Ct. App. 2007). As a result, the cash was lawfully seized from Perez in a search incident to his arrest. See Edwards v. State, 759 N.E.2d 626, 629 (Ind. 2001) (holding that a police officer may conduct a warrantless search of a person if the search is incident to a lawful arrest). In light of these circumstances, we conclude that the

12

trial court properly denied Perez's motion to suppress the cash that the police seized from his person following the arrest.

### D. Canine Sniff

After Perez was arrested for resisting law enforcement, Trooper Dockery took the drug detection canine to Perez's front door to sniff. Although the front door was closed, the canine alerted to the presence of illegal narcotics at the door.

Even though Perez claims that the police officers' actions of bringing the canine on the premises were illegal, we have determined that an individual does not harbor an expectation of privacy on a front porch where salesmen, neighbors, visitors, or religious proselytizers may appear at any time. In other words, as long as an officer is lawfully on the premises, the officer may have a dog sniff the residence without implicating the Fourth Amendment. Hoop v. State, 909 N.E.2d 463, 468 (Ind. Ct. App. 2009). Also, a dog sniff alone can provide probable cause for the issuance of a search warrant. Id. at 471. As a result, the canine's sniff at the closed front door of Perez's residence was not an illegal search, and his alert to the presence of narcotics alone was sufficient to provide probable cause for the warrant to search Perez's residence.

### E. Search Warrant

We next observe that the affidavit that was submitted in support of the search warrant provided probable cause that evidence related to drug trafficking would be found in Perez's residence. Indeed, a search warrant is presumed valid and the burden is on the defendant to rebut that presumption. Britt v. State, 810 N.E.2d 1077, 1080 (Ind. Ct. App.

13

2004). In deciding whether to issue a search warrant, "the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Query v. State, 745 N.E.2d 769, 771 (Ind. 2001). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. Id. In doing so, we focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Id.

As discussed above, the evidence demonstrated that three different vehicles, including one that was registered to Perez, were involved in four different controlled drug buys. Each of these vehicles had been seen at Perez's residence, and one of the vehicles had been followed back to Perez's house after cocaine was delivered. It was also determined that Perez's white truck had been used to deliver one-and-one-half ounces of cocaine earlier on the day that the search took place.

In our view, all of these circumstances, as well as those already discussed, provided probable cause for the issuance of the warrant. Thus, Perez's claims fail.

## F. The Indiana Constitution

Finally, Perez contends that his motion to suppress should have been granted because his right to be free from unreasonable search and seizure also violated the provisions of Article I, Section 11 of the Indiana Constitution.[1]

The purpose of Article I, Section 11 is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994). This provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995).

Although virtually identical to the wording of the search and seizure provision in the federal constitution, Indiana's search and seizure clause is independently interpreted and applied. Baniaga v. State, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. Id.

Generally, the reasonableness of a search or seizure under the Indiana Constitution turns on the balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure

---

[1] Article I, Section 11 of the Indiana Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated. . . ."

15

imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. Id. at 361.

In this case, the evidence establishes that the police officers' conduct was reasonable throughout their encounter with Perez. From the earlier controlled drug buys and surveillance efforts, the police had ample reason to believe that Perez's home was being used to store illegal drugs. The police went to Perez's home and asked to speak to him. They knew that he likely owned a handgun and observed that surveillance cameras and an alarm system protected the house.

Perez voluntarily exited his house and spoke to the officers at their request. During that conversation, Perez was agitated and nervous. Because Perez acted in a belligerent manner toward the officers, they summoned Trooper Dockery to the scene who was in uniform. When Perez's wife came to the door behind the officers, they asked her to step outside and she complied. At that point, the officers had not made any show of authority and had not touched anyone. Tr. p. 40-41, 54, 57, 59-60.

When Perez's wife opened the door, Perez repeatedly yelled at her in Spanish and started to charge toward the door and the officers. The officers did not know if Perez was ordering his wife to obtain a weapon or destroy evidence. Captain Turner put his hands in the air and told Perez to back away. Again the officer did not touch Perez. However, Perez "chest bumped" the officers and attempted to force his way past them to go inside the house. Tr. p. 79, 88. It was only then that Captain Turner told Trooper Dockery to

16

place Perez in handcuffs. In our view, that was a reasonable response to Perez's volatile behavior and his refusal to step away from the officers.

As discussed above, Perez repeatedly pulled away from Trooper Dockery while being handcuffed. Tr. p. 79, 90-91. Perez struggled with Trooper Dockery, reached for his gun, wrestled with him to the ground, and continued to resist until the police dog bit him. Id. at 90-93, 95-96. Trooper Dockery then arrested Perez for resisting law enforcement and searched him. Id. at 103. And as discussed above, cash that was used in the earlier controlled buy was found in his pocket.

The canine alerted to the presence of narcotics at Perez's front door. Under the Indiana Constitution, reasonable suspicion is required to conduct a dog sniff of a private residence. Hoop, 909 N.E.2d at 470. The prior investigation, Perez's suspicious behavior, and the discovery of the cash on Perez's person provided ample reason for the officers to conduct the dog sniff of Perez's front door. The dog's alert to the presence of narcotics, as well as the other circumstances, were sufficient to provide probable cause to search the home. The officers then procured a search warrant before entering and searching Perez's home.

In sum, the police officers had compelling evidence that Perez and his residence were involved in the sale of significant quantities of cocaine. The police made minimal intrusions upon Perez's ordinary activities and escalated that intrusion only as much as was necessary to respond to the evolving circumstances and Perez's behavior. Law enforcement officials had substantial need to protect themselves during their investigation

17

and to prevent the destruction of evidence while they secured a search warrant. In short, the police officers' conduct was reasonable throughout the investigation, and we conclude that the trial court properly denied Perez's motion to suppress.

The judgment of the trial court denying Perez's motion to suppress is affirmed, and we remand this cause for trial.

RILEY, J., and BARNES, J., concur.