**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Aug 27 2014, 9:19 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMMERLY A. KLEE**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRANK BLYTHE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1312-CR-1061 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Daniel Lee Pflum, Senior Judge
Cause No. 49G20-1207-FB-43758

**August 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Frank Blythe appeals his convictions for Dealing in a Narcotic Drug,[1] a class B felony, and Dealing in a Controlled Substance,[2] a class B felony. Blythe raises two arguments: (1) that the trial court violated his right to a speedy trial when it continued his trial because of court congestion; and (2) that the trial court erred in admitting evidence that was seized following execution of a search warrant at Blythe's residence. Finding no error, we affirm.

FACTS

At some point before June 2012, a Confidential Informant (CI) informed Indianapolis Police Detective Richard Hemphill that a man named "Frankie" was dealing heroin from a residence at 1529 South State Avenue ("the residence") in Indianapolis. After speaking with the CI, Detective Hemphill began an investigation to corroborate that information.

Between June 20 and June 22, 2012, Detective Hemphill met with the CI and conducted a controlled buy from the residence. All standard procedures for controlled buys were followed; specifically, all personal effects were removed from the CI, the CI was searched, the CI was given IMPD buy money and was fitted with an audio recording device, and the CI and the residence were under constant surveillance. An undercover detective drove the CI to the residence, and while inside, the CI and "Frankie" exchanged the official buy money for an amount of suspected heroin. No other person entered or

[1] Ind. Code § 35-48-4-1.

[2] I.C. § 35-48-4-2.

2

exited the residence during the transaction. Still under constant surveillance, the CI exited the residence, was driven by a detective to a predetermined location, and was again searched. Detective Hemphill recovered the suspected heroin, which was transported to the IMPD property room and placed in the narcotics drop vault.

Sometime during the seventy-two hours leading up to June 26, 2012, Detective Hemphill and the CI conducted a second controlled buy from the residence. All of the same procedures were followed.

On June 26, 2012, Detective Hemphill filed an affidavit requesting a warrant to search the residence. The affidavit detailed his training and experience, the common practices of those involved in drug trafficking known to him based on his training and experience, the investigation at issue, and the two controlled buys. Based on the affidavit, the trial court issued a search warrant for the residence.

On June 27, 2012, Detective Hemphill and other officers served the warrant and searched the residence. Among other things, they found Blythe in a bedroom, 3.5 grams of heroin packaged inside thirty-eight separate "balloons" and several Suboxone patches in that same bedroom, and a paper tablet with what appeared to be a ledger listing names with dollar amounts next to them. Police arrested Blythe that same day.

On July 2, 2012, the State charged Blythe with class B felony dealing in a narcotic drug, class D felony possession of a narcotic drug, class B felony dealing in a controlled substance, and class D felony possession of a controlled substance. On December 17, 2012, Blythe waived his right to a jury trial and the trial court scheduled a bench trial for

3

February 6, 2013. On February 6, 2013, the trial court granted Blythe a continuance, and on April 24, 2013, Blythe entered a guilty plea to class B felony dealing in a narcotic drug. The trial court took the plea under advisement and scheduled a sentencing hearing for June 11, 2013. Blythe failed to appear on June 11, 2013, and a warrant was issued for his arrest. Blythe was later arrested on that warrant.

On July 2, 2013, Blythe filed a motion to withdraw his guilty plea, which was later granted, and the trial court scheduled a bench trial for July 22, 2013. On July 11, 2013, the State moved to continue the bench trial because an essential police witness had recently had surgery and would not be returning to work until September 1, 2013, at the earliest. The trial court granted the State's motion over Blythe's objection and reset the trial for September 23, 2013. That same day, Blythe filed a demand for a speedy trial, requesting that he be brought to trial within seventy days. The trial court noted that the seventy-day period would expire on September 30, 2013, so the trial date already scheduled would fall within that period of time.

On September 23, 2013, the trial court determined that Blythe's trial could not proceed because the court's calendar was congested. Marion Superior Court 20 has two courtrooms available, and on that date, the presiding judge occupied one courtroom with two contested sentencing hearings and a suppression hearing, and the other courtroom was occupied by forty initial hearings and an ongoing bench trial regarding Stacy Wilson. In continuing Blythe's trial, the trial court specifically identified the Wilson trial as the cause of the court's congestion. Wilson was being tried for a class A felony offense and

had been incarcerated for approximately 500 days, and her trial was being conducted in four parts between August and October. On September 23, the case was scheduled for its third day of trial. The trial court concluded that Wilson's trial took precedence over Blythe's because it was already in progress, had already been fit into the court's calendar over many weeks, and involved a defendant who had been incarcerated for 500 days. Over Blythe's objection, the trial court continued his trial to November 18, 2013.

Immediately before the start of trial on November 18, 2013, Blythe moved for discharge under Criminal Rule 4, arguing that his right to a speedy trial had been violated. The trial court heard arguments, took the matter under advisement, and allowed the trial to proceed.

The trial began on November 18, was adjourned prematurely because Blythe had a medical emergency, and was completed on November 20, 2013. During trial, Blythe moved to suppress the evidence seized following the execution of the search warrant. The trial court denied that motion and admitted the evidence. The trial court took the motion to discharge and the verdict under advisement. On November 21, 2013, the trial court denied the motion for discharge and found Blythe guilty as charged. The trial court entered judgment of conviction for class B felony dealing in a narcotic drug and class B felony dealing in a controlled substance, and on November 27, 2013, the trial court sentenced Blythe to concurrent twenty-year terms on each count. Blythe now appeals.

5

Blythe raises two arguments on appeal. First, he argues that the trial court erroneously denied his motion for discharge that was based on his speedy trial demand. Second, he argues that the trial court erroneously admitted evidence seized following the execution of the search warrant.

## I. Speedy Trial

Criminal Rule 4(B) provides that "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion." Ind. Crim. Rule 4(B)(1). An exception to this rule occurs where congestion of the court calendar prevents the trial from occurring within the seventy-day period. Id.

Here, the trial court made a finding of congestion based on undisputed facts. As such, "the standard of review—like for all questions of law—is de novo." Austin v. State, 997 N.E.2d 1027, 1039 (Ind. 2013). Furthermore, "the ultimate reasonableness of the trial court's findings [regarding court congestion] depends very much upon the facts and circumstances of the particular case." Id.

While Criminal Rule 4(B) requires "a prioritized treatment," it "does not necessarily present a bright-line approach whereby all other cases must yield to the defendant who files a speedy trial motion." Id. at 1040. As articulated by our Supreme Court,

we do not intend to suggest that a trial judge must necessarily wipe his or her calendar clean, or jam a trial into an opening in a schedule or courtroom that lacks the space, time, and resources to accommodate it. They must, however, be mindful of their calendar and the seventy-day window and exercise all reasonable diligence to preserve the defendant's right to a speedy trial.

Id.

Here, the trial court found that, on the date of Blythe's bench trial, the court calendar was too congested to permit the trial to proceed. It noted that the Wilson trial was in its third day of trial, which required the trial court to reset Blythe's case. Appellant's App. p. 104. Blythe contends that because he had requested a speedy trial but Wilson had not, his trial should have taken precedence over Wilson's.[3] As noted above, however, Wilson was being tried for a class A felony offense and had been incarcerated for 500 days. Furthermore, the Wilson trial was being conducted in four separate parts and was already in progress.

In the only other available courtroom, there was a "lengthy contested sentencing from a case that was [from] May of 2012," which took all morning, and "a lengthy suppression hearing in the afternoon[.]" Tr. p. 143-44. There were also thirty-nine initial hearings and thirty-two final pretrial hearings set on the same day, meaning it was "a rather hectic day" and "[t]here was just no room at the inn[.]" Id. at 144. Under these circumstances, we do not find that the trial court erred by continuing Blythe's trial beyond the seventy-day speedy trial window because of court congestion.

---

[3] We note that Blythe has not presented any evidence beyond his own assertion that the Wilson defendant did not make a speedy trial demand.

## II.  Admission of Evidence

Blythe next argues that the trial court erroneously admitted the evidence that was seized following the execution of the search warrant.  Specifically, he contends that because the controlled buys were allegedly problematic, the search warrant violated his right to be free from unreasonable search and seizure provided by the Fourth Amendment to the United States Constitution.

Blythe proceeded to trial after the trial court denied his motion to suppress this evidence.  Inasmuch as direct review of the denial of a motion to suppress is proper only when the defendant files an interlocutory appeal, Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013), Blythe's appeal on this issue is best framed as a challenge to the admission of the evidence at trial.  The admission of evidence at trial is a matter left to the discretion of the trial court.  Id. at 259-60.  We review these determinations for abuse of that discretion, and will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.  Id. at 260.

A search warrant is presumed valid, and the burden is on the defendant to rebut that presumption.  Perez v. State, 981 N.E.2d 1242, 1251 (Ind. Ct. App. 2013).  In deciding whether to issue a search warrant, the trial court must "'make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  Query v. State, 745 N.E.2d 769, 771 (Ind. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (ellipsis in original).  In considering the validity of a

8

search warrant, the reviewing court must determine whether there was a "substantial basis" for concluding that probable cause existed. Id. at 771. To determine whether there was a substantial basis, the review court should focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause, affording significant deference to the trial court's determination. Id.

Here, Detective Hemphill's affidavit contained two general kinds of information supporting a finding of probable cause: the CI's initial statement to the detective that someone named "Frankie" was selling heroin from the residence, and the firsthand observations of Detective Hemphill and other officers during the two controlled buys at that address. The CI's statements to Detective Hemphill are hearsay, and where a warrant is sought based on hearsay information, the affidavit must either "(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay." Ind. Code § 35-33-5-2(b). The trustworthiness of hearsay for the purpose of proving probable cause can be established in a number of ways, including where independent police investigation corroborates the informant's statements. State v. Spillers, 847 N.E.2d 949, 953 (Ind. 2006).

Here, the CI's statements to Detective Hemphill were corroborated by the subsequent investigation and two controlled buys at that address, which revealed that heroin was, in fact, being sold from the residence by a man named "Frankie." Blythe

points out that Detective Hemphill testified at trial that the CI was not a credible and reliable person. Tr. p. 20. We do not find that testimony to be relevant. The detective's personal opinion regarding the general character of the CI is immaterial to the reliability of the information provided, especially given that the information was corroborated by the independent police investigation that ensued. Even if the CI was not credible before the first controlled buy, the police observation of the successful heroin purchase at the residence proved that the statements were credible and sufficiently reliable to support a finding of probable cause.

Regarding the controlled buys themselves, the affidavit stated that all normal and required procedures were followed before, during, and after both transactions. Firsthand police observation of a controlled buy can independently form the basis for probable cause, and in such a case, proof of the informant's reliability is unnecessary. See Mills v. State, 177 Ind. App. 432, 434-35, 379 N.E.2d 1023, 1026 (Ind. Ct. App. 1978).

In this case, before both buys, the CI's personal effect were removed, and the CI was searched for money, drugs, and other contraband. Blythe argues that because the CI was searched by a civilian employee rather than a police officer, this control is unreliable. He offers no evidence or citation to authority to support this assertion, however, and does not contend that anything about the search itself was improper aside from the identity of the person conducting the search. Also before both buys, police gave the CI marked buy money and equipped her with audio recording equipment, and an undercover officer drove her to the residence.

During the buys, Detective Hemphill and other officers observed the CI and the entrances and exits from the residence, ensuring that no one else entered or exited the building while the CI was inside. Blythe contends that this control was insufficient because at one point, a detective lost sight of the CI when she walked around the side of the residence. But Blythe presents no evidence regarding the length of time the CI was out of sight or whether the CI was out of sight of all of the observing officers. In Whirley v. State, 408 N.E.2d 629, 630-31 (Ind. Ct. App. 1980), testimony revealed that police lost sight of the informant for approximately twenty seconds during a controlled buy as the informant walked from the front to the back of the house. This Court found that "the 20 second loss of visual contact was not so substantial as to cause the controls to be inadequate, thereby invalidating the search warrant issued by an impartial magistrate based on the buy." Id. at 631. Here, likewise, there is no evidence tending to establish that the loss of visual contact by one of the observing officers was so substantial as to invalidate the search warrant.[4]

Blythe also contends that the warrant is invalid because it does not state that Detective Hemphill heard the heroin sales via the audio surveillance equipment. The affidavit does not specify how Detective Hemphill learned this information, but the

---

[4] Blythe implies, but does not explicitly argue, that the warrant is invalid because information regarding the detective's opinion of the CI's credibility and the loss of visual sight of the CI for a certain period of time was not included in the affidavit. We note that Blythe has established neither that the detective omitted those facts with the intent to make, or in reckless disregard of whether they made, the affidavit misleading, nor that if the omitted information had been included, the affidavit would not have supported a finding of probable cause. See Ware v. State, 859 N.E.2d 708, 718 (Ind. Ct. App. 2007).

absence of that fact does not undermine the remaining, substantial, and reliable information in the affidavit.

Finally, we note that even if we had found probable cause to be lacking, the warrant would not have been invalid because the police relied on the warrant in objective good faith. Ind. Code § 35-37-4-5. In such cases, there is no police misconduct to deter, and the purpose of the exclusionary rule is not achieved by the exclusion of this evidence. Hensley v. State, 778 N.E.2d 484, 489 (Ind. Ct. App. 2002). Evidence is obtained by an officer in good faith if it is obtained pursuant to a "search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid[.]" I.C. § 35-37-4-5(b)(1)(A).

Here, there is no evidence that Detective Hemphill intentionally misled the trial court by filing an affidavit that he knew to be false or with reckless disregard for the truth. Moreover, the affidavit was not so lacking in indicators of probable cause as to render belief in its validity unreasonable. Jaggers v. State, 687 N.E.2d 180, 184 (Ind. 1997). Under these circumstances, therefore, we find that the officers who executed the warrant did so in good faith. For all of the reasons stated herein, we find that the search warrant was valid and that the trial court did not err in finding the evidence seized following the execution of that warrant to be admissible.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.