## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 23 2015, 9:53 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

George McDade,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 23, 2015

Court of Appeals Case No.
49A05-1501-CR-04

Appeal from the Marion Superior Court

The Honorable Amy J. Barbar, Magistrate

The Honorable Mark T. Rothenberg, Judge

Case No. 49G02-1407-F5-352

**Vaidik, Chief Judge.**

# Case Summary

Police have a legal right to take reasonable steps to stabilize a situation during the course of their investigation for both the safety of the officers as well as the citizens present. This includes placing an individual in handcuffs to enable the officers to conduct their investigation and to ensure their own safety or the safety of others. Here, police officers who responded to a disturbance between a mother and her intoxicated adult son reasonably suspected that criminal activity was foot and detained George McDade to stabilize the situation and to conduct an investigation. However, McDade resisted the officers' efforts to handcuff him and bit one of the officers. Because the officers had reasonable suspicion that criminal activity was afoot and because McDade did not have the right to resist their efforts to handcuff him or to batter them, we affirm McDade's convictions for Level 5 felony battery against a public-safety official and two counts of Class A misdemeanor resisting law enforcement.

# Facts and Procedural History

The facts most favorable to the verdicts reveal that around 10:00 p.m. on July 3, 2014, Indianapolis Metropolitan Police Department Officer Justin Toussing was dispatched to 3036 Winton Avenue for a reported disturbance between a mother and her intoxicated adult son. Tr. p. 40. Dispatch told Officer Toussing that it was unknown if any weapons were involved. *Id.* at 83. After arriving at the scene and while still in his patrol car with the windows slightly down, Officer Toussing heard "screaming" coming from inside the home. *Id.*

at 42. Officer Toussing saw a man—later identified as McDade—come outside the home and "violently" throw a plastic chair to the ground, shattering it. *Id*. McDade looked in the direction of Officer Toussing but did not make eye contact with him. *Id*. at 53. Officer Toussing got out of his marked patrol car, at which point McDade walked back inside the home, leaving the door open. *Id*.

[3] Officer Toussing approached the front door and heard more yelling and screaming, things being broken, and a female—later identified as Pamela Davis, McDade's mother—"essentially" say, "You can't be destroying things in my house." *Id*. at 47, 61, 91. Officer Toussing also heard "[Pamela] say she wanted [McDade] out of her house." *Id*. at 91. While standing at the door, Pamela invited Officer Toussing inside.[1] *Id*. at 163, 172. When Officer Toussing entered, he saw McDade and Pamela standing in the house, an overturned coffee table, and other miscellaneous items all over the floor. *Id*. at 48, 54, 61. McDade was still screaming and yelling, and pacing about the house. *Id*. at 64. Officer Toussing thought that the situation was "going to escalate due to the violent outbursts that [he] saw outside [and] the condition of the house inside." *Id*. at 64-65. Officer Toussing was concerned for Pamela's safety and not sure if "this was going to turn into a physical altercation, [or] if it already had." *Id.* at 65. Moreover, Officer Toussing "was under the

[1] McDade does not argue on appeal that the officers were unlawfully present in the home.

assumption that someone was in [Pamela's] house that shouldn't be." *Id*. Therefore, Officer Toussing decided to place McDade in handcuffs to detain him and to secure the scene before he started investigating. *Id*. at 64-65, 82, 88. McDade was not under arrest at this time. *Id*. at 66, 91-92.

[4] Officer Toussing asked McDade to "place his hands behind his back" and then "grabbed his left arm with [his] hand." *Id*. at 65, 67-68, 84. When Officer Toussing grabbed McDade's arm, McDade "violently" pulled his arm away. *Id*. at 67. At this point, Officer Toussing decided to arrest McDade. *See id*. at 92 ("Q: And at what point did you stop and decide that you were going to place him under arrest? A: After the initial arm movement away from me. . . ."). After pulling away from Officer Toussing, McDade sat down on the couch. *Id*. at 68. Officer Toussing told him to stand up and put his hands behind his back. By this time Officer Joel Kellar had arrived and entered the house. Because the situation was escalating, Officer Toussing drew his taser, pointed it at McDade, and told him again to stand up and put his hands behind his back. *Id*. at 71. McDade did not comply. *Id*. at 72. Officer Toussing went to grab McDade's arm, but he pulled it away and looked at both Officers Toussing and Kellar in an "aggressive manner," like "we're going to brawl." *Id*. at 116-17. Because it was apparent that McDade was not going to comply, Officer Kellar tackled McDade on the couch. *Id*. at 72. As Officers Toussing and Kellar tried to place McDade in handcuffs, McDade resisted by "using his strength and force" to keep them from pulling out his hand from underneath him and placing it behind his back. *Id*. at 73.

[5] The officers struggled for a few minutes before they were able to place McDade in handcuffs. *Id*. When Officer Kellar was on top of McDade, McDade bit Officer Kellar's upper shin. *Id*. at 124. After Officer Kellar was bitten, both officers moved McDade to the ground to conduct a pat down. *Id*. at 78. At this point, Pamela informed the officers that McDade had a leg injury and surgery on the leg. *Id*. at 130-31. McDade was removed from the home and taken into custody. Officer Kellar received treatment on the scene for the bite wound, and was later prescribed triple-antibiotic ointment.

[6] The State charged McDade with Count I: Level 5 felony battery against a public-safety official for biting Officer Kellar, Count II: Class A misdemeanor resisting law enforcement by forcibly resisting Officer Toussing, and Count III: Class A misdemeanor resisting law enforcement by forcibly resisting Officer Kellar. Appellant's App. p. 11, 14-15. In December 2014, a jury trial was held. Although McDade did not present a self-defense jury instruction, defense counsel read the self-defense statute during closing arguments. Tr. p. 240-41. The jury found McDade guilty as charged. *Id.* at 259. The court sentenced McDade to concurrent terms of four years with 1244 days suspended for Count I, one year suspended for Count II, and one year suspended for Count III. *Id*. at 285; Appellant's App. p. 11.

[7] McDade now appeals.

# Discussion and Decision

McDade contends that the evidence is insufficient to sustain his convictions. On a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). This Court respects the jury's exclusive province to weigh conflicting evidence. *Id*. It considers only the evidence most favorable to the verdict. *Id*. This Court must affirm if the evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

# I. Resisting Law Enforcement

First, McDade argues that the evidence is insufficient to support both of his convictions for Class A misdemeanor resisting law enforcement. In order to convict McDade of Class A misdemeanor resisting law enforcement as charged here, the State had to prove that McDade knowingly or intentionally forcibly resisted, obstructed, or interfered with Officers Toussing and Kellar, law-enforcement officers, while they were lawfully engaged in their duties as law-enforcement officers. Ind. Code § 35-44.1-3-1(a)(1); Appellant's App. p. 14-15.

Specifically, McDade argues that there is insufficient evidence that the officers were lawfully engaged in the execution of their duties because "[n]o evidence in the record supported a reasonable suspicion McDade was involved in criminal activity and nothing beyond a generalized concern for officer safety supported the belief McDade might have a weapon." Appellant's Br. p. 3.

[11]    Police have a legal right to take reasonable steps to stabilize a situation during the course of their investigation for both the safety of the officers as well as the citizens present. *Perez v. State*, 981 N.E.2d 1242, 1249 (Ind. Ct. App. 2013), *trans. denied*; *Williams v. State*, 959 N.E.2d 357, 359 (Ind. Ct. App. 2011), *trans. denied*. This includes placing an individual in handcuffs to enable the officers to conduct their investigation and to ensure their own safety or the safety of others. *Perez*, 981 N.E.2d at 1249. Safety concerns of a police officer are a legitimate and weighty justification for such an intrusion. *Id.*

[12]    Police can lawfully detain a person when reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity had occurred or was about to occur. S*ee Perez*, 981 N.E.2d at 1249-50.

[13]    Here, because Officer Toussing was concerned for both his safety and Pamela's, he lawfully detained McDade in order to stabilize the situation so that he could conduct an investigation. *See Williams*, 959 N.E.2d at 358-59 (finding that the officers acted lawfully when they handcuffed the defendant—who was screaming, yelling, flailing her arms, and making the scene more chaotic—for safety reasons so that they could conduct their investigation). Officer Toussing responded to a disturbance between a mother and her intoxicated son. When Officer Toussing arrived he was not sure if weapons were present, and when he entered the house he saw that it was in disarray and that McDade was in an agitated state, yelling and screaming. Officer Toussing was concerned for his and Pamela's safety. Tr. p. 83. Based on these facts, Officer Toussing was

worried that the situation "was going to turn into a physical altercation . . . ." *Id.* at 65. Thus, Officer Toussing had the right to place McDade in handcuffs in order to secure the scene.

[14] Furthermore, Officer Toussing had reasonable suspicion that criminal activity was afoot, thus allowing him to lawfully detain McDade. S*ee Perez*, 981 N.E.2d at 1249-50 (finding that because there was reasonable suspicion that criminal activity was afoot, it was reasonable for the police to detain and place the belligerent defendant in handcuffs in order to control the scene and protect themselves and potential evidence while they conducted their investigation).[2] When Officer Toussing approached the house he heard things being broken, "[Pamela] say she wanted [McDade] out of her house," and something to the effect of "[y]ou can't be destroying things in my house." Tr. p. 47, 91. Based on these facts, Officer Toussing was lawfully engaged in the execution of his duties when he took steps to secure the scene because he was under the assumption that McDade should not have been in Pamela's house. Because

---

[2] McDade argues that this case is similar to *Briggs v. State*, 873 N.E.2d 129 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*, where this Court reversed the defendant's conviction for resisting law enforcement. In *Briggs*, police officers provided stand-by assistance to Briggs' roommate so that the roommate could move out peacefully. Briggs allowed the officers in his house and then walked toward his bedroom. Concerned that Briggs could be retrieving a weapon, the officers ordered him to stop and tried to grab him. On appeal, we concluded that there was insufficient evidence that the officers were lawfully engaged in the execution of their duties when they ordered Briggs to stop and grabbed his arms. *Id.* at 134. Because the encounter was consensual, Briggs was free to disregard the officers. *Id.* at 133. And a mere hunch that Briggs could have a weapon in his bedroom was not a sufficient basis for detaining him. *Id.*

This case, however, is distinguishable from *Briggs* because the encounter was not consensual, and Officers Toussing and Kellar were investigating a report of a disturbance, not merely providing stand-by assistance. Also, Officers Toussing and Kellar faced a safety risk that was not present in *Briggs*, and they had reasonable suspicion to believe that criminal activity had occurred and might continue if they did not secure the scene.

Officer Toussing had reasonable suspicion that McDade had committed criminal trespass[3] and/or that criminal activity was about to occur, it was reasonable for him to detain McDade so that he could control the scene and protect himself and Pamela.

[15] The evidence also shows that McDade forcibly resisted the officers' attempts to place him in handcuffs. A citizen may not use force to resist a peaceful arrest by an individual he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful. *Perez*, 981 N.E.2d at 1250. That is, when Officer Toussing asked McDade to put his hands behind his back, McDade forcibly resisted Officer Toussing by "violently" pulling away from him. McDade also used force to resist Officer Kellar when he tried to gain control of McDade. This forcible resistance constituted the offense of resisting law enforcement. *See id*.

[16] The evidence supports the fact that both Officers Toussing and Kellar were lawfully engaged in the execution of their duties. Officer Toussing had reasonable suspicion that criminal activity was afoot, and he needed to secure the scene to further investigate. Therefore, the evidence is sufficient to support McDade's two convictions for forcibly resisting law enforcement.

---

[3] "A person who not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent" commits Class A misdemeanor criminal trespass. Ind. Code § 35-43-2-2(b)(2) (formatting altered).

# II. Battery against a Public-Safety Official

[17]   McDade argues next that the evidence is insufficient to support his conviction for Level 5 felony battery against a public-safety official[4] for biting Officer Kellar because the State failed to rebut his self-defense claim.

[18]   A valid claim of self-defense is legal justification for an otherwise criminal act. *Coleman v. State,* 946 N.E.2d 1160, 1165 (Ind. 2011).  When self-defense is raised, the State must disprove at least one of the elements of self-defense beyond a reasonable doubt.  *Griffin v. State*, 997 N.E.2d 375, 381 (Ind. Ct. App. 2013), *trans. denied*.  A person is justified in using reasonable force against a public servant[5] if the person reasonably believes the force is necessary to protect the person from what the person reasonably believes to be the imminent use of unlawful force.  Ind. Code. § 35-41-3-2(i)(1).  A person is not justified in using force if the person is committing or escaping after the commission of a crime or is the initial aggressor.  I.C. § 35-41-3-2(g)(1), (3).  Deciding whether a detainee's use of force was reasonable and whether he reasonably believed it was necessary to protect himself from the imminent use of unlawful force is broadly a matter for the finder of fact.  *Griffin*, 997 N.E.2d at 381.

---

[4] "Public safety official" includes "a law enforcement officer."  Ind. Code § 35-42-2-1(a)(1).

[5] Indiana Code section 35-41-3-2(b) provides that "'public servant' means a person described in IC 35-31.5-2-129 or IC 35-31.5-2-185."  Indiana Code section 35.31.5-2-185, in turn, provides that "law enforcement officer" means, among other things, "a police officer."

[19] McDade claims that he "used reasonable force to protect himself from what he reasonably believed was unlawful force. After being put in handcuffs, McDade was pinned down by a police officer on top of him, putting pressure on his injured leg and groin area, which inflicted a great deal of pain." Appellant's Br. p. 3. However, we find that McDade was not justified in using force against the officers because the record shows that McDade was committing a crime—resisting law enforcement—when he bit Officer Kellar. The record also shows that Pamela did not tell the officers about McDade's leg injury until after McDade bit Officer Kellar and the officers were doing their "paperwork." *See* Tr. p. 130-31. We therefore affirm McDade's conviction for Level 5 felony battery against a public-safety official. *See Barnes v. State*, 946 N.E.2d 572, 578 (Ind. 2011) ("Because we decline to recognize the right of a homeowner to reasonably resist unlawful entry, Barnes is not entitled to batter [the police officer], irrespective as to the legality of [the officer]'s entry."), *clarified on reh'g*, 953 N.E.2d 473 (Ind. 2011).

[20] Affirmed.

Kirsch, J., and Bradford, J., concur.