## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 05 2017, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mario Gonzaga,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 5, 2017

Court of Appeals Case No.
49A04-1610-CR-2357

Appeal from the Marion Superior Court

The Honorable Amy M. Jones, Judge

Trial Court Cause No.
49G08-1511-CM-40807

**Bradford, Judge.**

# Case Summary

[1] On November 15, 2015, Indianapolis Metropolitan Police Department ("IMPD") Officer Michael Wagner-Gilbert responded to a dispatch about a reckless driver on the northeast side of Indianapolis. Upon his arrival to the scene, Officer Wagner-Gilbert observed Appellant-Defendant Mario Gonzaga driving erratically. After stopping Gonzaga, Officer Wagner-Gilbert observed that Gonzaga had slurred speech, bloodshot and glassy eyes, the odor of alcoholic beverage on his breath, and poor balance. Believing that Gonzaga was impaired, Officer Wagner-Gilbert performed a portable breath test ("PBT"), and the result showed that Gonzaga had an alcohol content equivalent ("ACE") of at least 0.15 gram of alcohol per 100 milliliters of his blood. Using this information, Appellee-Plaintiff the State of Indiana ("the State") obtained a search warrant in order to draw a blood sample. The results of the blood sample revealed that Gonzaga had an ACE of 0.241.

[2] On November 17, 2015, the State charged Gonzaga with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class A misdemeanor operating a vehicle with an ACE of 0.15 or more, and Class C misdemeanor operating a motor vehicle without ever receiving a license. The State tried Gonzaga at a bench trial on September 21, 2016. During the trial, Gonzaga orally moved to suppress the evidence of his blood draw. The trial court denied his motion and found Gonzaga guilty as charged. That same day,

the trial court sentenced Gonzaga to an aggregate sentence of 365 days with 361 days suspended to probation.

[3] On appeal, Gonzaga contends that the trial court abused its discretion in admitting the evidence found pursuant to the search warrant. Specifically, Gonzaga argues that the warrant was deficient due to the presence of numerous misstatements. Because we disagree, we affirm.

# Facts and Procedural History

[4] Around midnight on November 15, 2015, IMPD Officer Wagner-Gilbert responded to a dispatch concerning a "reckless driver" near Post Road and Washington Street. Tr. p. 6. Upon Officer Wagner-Gilbert's arrival to the scene, he witnessed Gonzaga driving a vehicle that matched the description from the dispatch. Officer Wagner-Gilbert observed Gonzaga make an "erratic left turn," almost collide with his patrol car, and drive across three lanes of traffic. Tr. p. 8. After Officer Wagner-Gilbert activated his emergency lights and pursued the vehicle, Gonzaga stopped his car in the middle of the road. Officer Wagner-Gilbert approached Gonzaga on the driver's side of the vehicle and asked him to move his car to the side of the road. Gonzaga was the only person in the vehicle. When Officer Wagner-Gilbert asked for Gonzaga's driver's license, Gonzaga responded that he did not have one. Officer Wagner-Gilbert later confirmed via the control operator that Gonzaga had never been issued an Indiana driver's license.

During the stop, Officer Wagner-Gilbert observed that Gonzaga's breath smelled of alcoholic beverage, his speech was slurred, and he had bloodshot and glassy eyes. Believing that Gonzaga was extremely impaired, Officer Wagner-Gilbert asked Gonzaga to exit the vehicle. Once outside the vehicle, Officer Wagner-Gilbert noticed that Gonzaga could not maintain adequate balance and had to lean against his own vehicle for stability. Officer Wagner-Gilbert then administered a PBT. After administering the PBT, which indicated an ACE of greater than 0.15, Officer Wagner-Gilbert placed Gonzaga in handcuffs and transported him to the Arrestee Processing Center ("APC").

After transporting Gonzaga to the APC, Officer Wagner-Gilbert met with Officer Craig Wildauer, an IMPD impaired driving investigator, and told him about the stop and his suspicion that Gonzaga was intoxicated. Officer Wildauer also noted that Gonzaga smelled of alcoholic beverage, his eyes were glossy and bloodshot, and he had difficulty staying balanced. Using the information he obtained from Officer Wagner-Gilbert, Officer Wildauer completed an affidavit for probable cause and applied for a search warrant for a blood sample from Gonzaga. The affidavit included the following information:

> On 11-15-15, at 12:23 am at 9100 E. Washington Street that there is now concealed certain evidence, namely: Blood in such person, which is evidence of the crime of operating a vehicle/ motor vehicle while intoxicated that occurred on 11-15-15 at 12:08 at 9100 E. Washington Street and tends to show that said person committed such offense; that unless samples of said blood are obtained for chemical analysis forthwith, the opportunity to make such analysis will be lost forever; and that the facts tending

to so establish grounds for issuance of a search warrant are as follow:

1.  I am an officer with the IMPD Department.

2.  In the course of my duties I had occasion to investigate:

   C. [X] the scene of an operating a vehicle while intoxicated. Officer Michael Wagner[-]Gilbert observed erratic and/or unlawful motor vehicle operation as follows: observed Mario Gonzaga operate a 2003 Honda with Indiana license plate #[] and observed the vehicle fail to stay within its lane markings at N. Post Road and E. Washington street, travelling southbound, then eastbound.

4. I believe the above named individual was intoxicated because I learned through my investigation the suspect:

   [X] Odor of alcohol beverage on their breath
   [X] Eyes were glassy & bloodshot
   [X] Displayed an abusive attitude
   [X] Balance was very poor
   [X] Leaning against vehicle

P.B.T. Result: .17%

5. The above named individual:

   D. [X] is unable to consent to a blood sample being taken because an appropriate interpreter was not available to translate the Indiana Implied Consent Law.

State's Exhibit 1.

[7] The warrant was signed by a judge at 12:45am. After receiving the signed warrant, Officer Wildauer transported Gonzaga to Eskenazi Hospital to have his blood drawn. At Eskanazi, Nurse Jessica Rand drew blood from Gonzaga at 1:22am. The blood sample later revealed that Gonzaga's blood had an ACE of 0.241.

[8] On November 21, 2015, Gonzaga was charged with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class A misdemeanor operating a vehicle with an ACE of 0.15 or more, and Class C misdemeanor operating a vehicle without ever receiving a license. On September 21, 2016, a bench trial commenced during which Gonzaga orally moved to suppress the evidence obtained by his blood sample. Gonzaga argued that the warrant for his blood sample violated his Fourth Amendment Rights. However, the trial court denied Gonzaga's motion to suppress and Gonzaga was found guilty on all three counts. The trial court sentenced Gonzaga to an aggregate sentence of 365 days with 361 days suspended to probation.

# Discussion and Decision

[9] Gonzaga argues that the warrant for the blood draw was deficient because the affidavit for probable cause was vague and contained too many misstatements. "The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of discretion by the trial court resulting in the denial of a fair trial." *Johnson v.* State, 831 N.E.2d 163, 168-69 (Ind. Ct. App. 2005) (citing

*Williams v. State*, 782 N.E.2d 1039, 1045 (Ind. Ct. App. 2003)), *trans. denied*. The Court does not reweigh evidence and considers conflicting evidence in a light most favorable to the trial court's decision. *See Warner v. State*, 579 N.E.2d 1307, 1309 (Ind. 1991) (citing *Massey v. State*, 473 N.E.2d 146, 147 (Ind. 1985)); *Coleman v. State*, 490 N.E.2d 711, 713 (Ind. 1986)). The burden is on Gonzaga to rebut the presumption that the warrant is valid. *See Perez v. State*, 981 N.E.2d 1242, 1251 (Ind. Ct. App. 2013) (citing *Britt v. State*, 810 N.E.2d 1077, 1080 (Ind. Ct. App. 2004)).

[10] Gonzaga argues that the court abused its discretion in admitting the blood sample from Gonzaga pursuant to the search warrant because there were inaccuracies in the affidavit that made the warrant invalid. Gonzaga also contends that the officer signing the affidavit for the warrant lacked personal knowledge thereby making the warrant invalid.

[11] Officer Wildauer did use a template that had the "displayed an abusive attitude" box checked. Officer Wildauer did not notice this mistake until the day of the bench trial. However, once he noticed this mistake, Officer Wildauer immediately made the court aware of this error and even testified that at no time was Gonzaga abusive during his or Officer Wagner-Gilbert's encounter with him. "Mistakes and inaccuracies of facts stated in the affidavit, however, will not vitiate the reliability of the affidavit by the magistrate so long as it is also determined that such mistakes were innocently made." *Johnson v. State*, 472 N.E.2d 892, 900 (Ind. 1985). Furthermore, we recognize that Officer Wagner-Gilbert still had probable cause to find that Gonzaga was intoxicated

despite him not displaying an abusive attitude. Indeed, the trial court found that "the abusive attitude quite frankly is probably absolutely one of the least signs of intoxication that you know—it's one of the least probative signs." Tr. p. 37. Therefore, because this mistake was made innocently and Officer Wagner-Gilbert still had probable cause to assume that Gonzaga was intoxicated, we conclude the affidavit was not deficient due to this minor mistake.

[12] Gonzaga also refers us to *Herron v. State*, 44 N.E.3d 833 (Ind. Ct. App. 2015) and argues that Officer Wildauer's use of boilerplate language and vague information makes the warrant invalid. This court is reminded that the use of boilerplate language is valid "as long as the affidavit contains sufficient facts specific to the search at issue to establish probable cause…." *Rios v. State*, 762 N.E.2d 153, 160 (Ind. Ct. App. 2002). Furthermore, *Herron* is easily distinguished, from the instant matter. In *Herron*, the affidavit that was submitted did not contain detailed facts concerning the events that took place the night of the arrest nor who was operating the vehicle. *Herron*, 44 N.E.3d at 836-37. In the current case, Officer Wildauer mentions that Officer Wagner-Gilbert "observed Mario Gonzaga operate a 2003 Honda" and that Gonzaga was the "only person in the vehicle" in the affidavit. Tr. p. 7-8. We conclude that the previously-mentioned statements are sufficient to determine who was driving the car. Furthermore, the affidavit does give a detailed account, including the date, time, and location that these events took place on the night of Gonzaga's arrest.

[13] Once arrested, Officer Wagner-Gilbert transferred custody of Gonzaga to Officer Wildauer, who filled out the affidavit for probable cause. Gonzaga argues that Officer Wildauer was not authorized to do so. However, Officer Wildauer was able to fill out the affidavit for probable cause because, "as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant." *Taylor v. State*, 615 N.E.2d 907, 911 (Ind. App. 1993) (citing *Utley v. State*, 589 N.E.2d 232, 237 (Ind. 1992)). While he may not have been on the scene, Officer Wagner-Gilbert's knowledge was imputed to Officer Wildauer; therefore, there was no error in him filling out the affidavit. Therefore, because the information presented within the affidavit was factual, the mistake was made innocently, and Officer Wagner-Gilbert's knowledge was imputed to Officer Wildauer, we find that Gonzaga did not meet his burden of proving that the warrant was invalid.

## Conclusion

[14] The trial court did not abuse its discretion when it denied Gonzaga's motion to suppress evidence obtained pursuant to the valid search warrant. We affirm the judgement of the trial court.

[15] The judgement of the trial court is affirmed.

Brown, J., and Pyle, J., concur.